CRUCIBLE STEEL COMPANY OF AMERICA, APPELLANT, v. POLACK TYRE AND RUBBER COMPANY, RESPONDENT.

Submitted March 25, 1918—Decided June 17, 1918.

1. The Garage Keepers' Lien act (*Pamph. L.* 1915, *p.* 556) providing that garage keepers and automobile repairmen shall have a lien on any automobile for which they have furnished certain services or accessories, even after the possession of such automobile has passed from their hands, does not operate to deprive a person of his property without due process of law.

2. The Garage Keepers' Lien act (*Pamph. L.* 1915, *p.* 556) does not impair the obligation of contracts made after the passage of the act, as such act is a part of any contract, which it might affect, made after its passage.

3. The Garage Keepers' Lien act (*Pamph. L.* 1915, *p.* 556) embraces but one object, which is expressed in its title.

On appeal from the Supreme Court.

For the appellant, *William K. Flanagan.*

For the respondent, *Kessler & Kessler.*

The opinion of the court was delivered by

KALISCH, J.    This appeal from a judgment of the Supreme Court challenges the constitutionality of an act entitled "An act for the better protection of garage keepers and automobile repairmen" (*Pamph. L.* 1915, *p.* 556; *Comp. Stat. Sup., pp.* 898, 899, §§ 1, 2, 3), which provides as follows:

"1. All persons or corporations engaged in the business of keeping a garage or place for the storage, maintenance, keeping or repair of motor vehicles, and in connection therewith stores, maintains, keeps or repairs any motor vehicle or furnishes gasoline, accessories or other supplies therefor at the request or with the consent of the owner or his representative, whether such owner be a conditional vendee or a mortgagor remaining in possession or otherwise, has a lien upon such motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle or for furnishing gasoline, accessories or other supplies therefor, and may without process of law detain such motor vehicle at any time it is lawfully in his possession until such sum is paid.

"2. Any person or corporation acquiring a lien under the provision of section 1 of this act shall not lose such lien by reason of allowing the motor vehicle or part or parts of the motor vehicle to be removed from the control of the person or corporation having such a lien, and in case a motor vehicle or part or parts are so removed, the person or corporation having the said lien may, without further process of law, seize the motor vehicle or part or parts thereof wherever the same is or are found within the State of New Jersey.

MARCH TERM, 1918. 223

*92 N. J. L.*    Crucible Steel Co. v. Polack Tyre & Rubber Co.

"3. All such property so held by any such garage keeper or automobile repairmen shall, after the expiration of thirty days from the date of such detention, be sold at public auction, upon notice of said sale being first published for the space of two weeks in some newspaper circulating in the city, borough, town, township or other municipality, in which said garage keeper or automobile repair shop is situated, also after five days' notice of said sale set up in five of the most public places in said city or township, and the proceeds of said sale shall be applied to the payment of such lien and the expenses of such sale; and the balance, if any remaining, shall be paid to the owner of such property or his representatives; and if the said balance is not claimed by said owner within sixty days after said sale, then the balance to be paid over to the overseer of the poor of the said city or township for the support of the poor.

"4. This act shall take effect immediately. Approved April 14th, 1915."

The facts which present the question as to the constitutionality of the act for decision are, as follows: The appellant, who was the plaintiff below, on January 10th, 1916, was the owner of an automobile truck which, among several other trucks, he sold to one George A. Felt, by a bill of conditional sale, which instrument provides for weekly payments on account of the purchase price, stipulates that the title and ownership of the truck shall remain in the plaintiff until the whole of the purchase price, or any judgment obtained therefor, shall be fully paid, and covenants that upon default in the performance of any of the obligations by the vendee, the whole purchase price shall become due and payable, and that the vendor, if it shall elect to do so may take possession of the truck; and the vendee therein authorizes and empowers the vendor to repossess itself of the truck in case he defaults. This bill of conditional sale was recorded in the office of the register of Hudson county on January 13th, 1916, and also in the office of the register of Essex county, on April 3d, 1916.

On May 11th, 1916, and at the request of Felt, the conditional vendee, defendant, applied four tires to the truck of the value of $427.88; these tires were affixed to the double rear wheels; the wheels themselves, to which the tires were applied, were delivered to the defendant by the conditional vendee, but the truck itself seems never to have been in the defendant's possession, prior to its being seized by the defendant on August 25th, 1916.

The vendee, Felt, defaulted in the payment of the installments of the purchase price and thereupon, and on May 18th, 1916, the vendor demanded possession of the truck of the vendee, who refused to deliver the same. On the same day the vendor caused the truck to be replevied, and on May 25th, 1916, the vendee gave a bill of sale for the truck to the vendor. The replevin action, however, instituted by the vendor was continued, and on July 16th, 1916, judgment final was entered in favor of the vendor. On August 25th, 1916, the plaintiff being in possession of the truck, to the wheels of which the defendant supplied the tires and made repairs, the defendant seized the same under and by virtue of the provisions of the statute above set forth. On September 13th, 1916, the plaintiff brought its action of replevin and as a defence thereto, defendant set up and claimed a lien on the truck by virtue of the provisions of the statute, *supra,* and filed a counter-claim of $427.88, for the tires supplied and repairs made. The case came on for trial before Judge Speer, sitting with a jury, and the facts being uncontroverted, the court, by consent of counsel for the respective parties, discharged the jury from a further consideration of the case, reserving the legal question as to the constitutionality of the act for future determination. The learned trial judge subsequently held the act to be constitutional, and gave judgment for defendant against the plaintiff on the counter-claim.

At the outset, for the sake of clarity, it is essential to note that the facts of the present case invoked, solely, the application of the first two sections of the statute impugned as unconstitutional, owing to the fact that the plaintiff re-

MARCH TERM, 1918. 225

*92 N. J. L.* Crucible Steel Co. v. Polack Tyre & Rubber Co.

plevied the truck from the defendant a few days after its seizure by the latter, thereby raising the single issue of the validity of the lien, authorized by these sections.

The third section of the act provides a method of procedure to be pursued by the lienor, in case he detains the property for the enforcement of his lien. It is plain from a fair reading of the second section of the statute that when the owner or representative of such owner fails to pay for the repairs or supplies and demands his property and the lienor refuses to surrender it, unless the charges for the repairs thereon or supplies thereto are first paid, that a detention within the meaning of the statute takes place. Or, if the lienor seizes such property after it has been out of his possession and holds it for the purpose of enforcing his lien thereon, it likewise is a detention within the meaning of the second section of the statute.

In the present case, the defendant seized the property on which it had acquired a lien, but which it had let go out of its possession, and before the time had arrived for the foreclosure of the lien, in the manner provided by the third section of the act, the plaintiff, owner of the property, caused it to be replevied. Thus, it is obvious that we are not concerned with the validity of the third section of the act, unless the first and second sections thereof are so interwoven with and dependent on the third, that the latter cannot be excised without defeating the main purpose and general intent of the legislature in enacting the statute. The rule in this regard is well stated, by Chief Justice Gummere, in *State Board of Health* v. *Schwarz Bros. Co.,* 86 *N. J. L.* 170, speaking for this court, and in discussing the constitutionality of the act drawn into question in that case (on *p.* 172), where he says, "An act is not necessarily void because it contains an unconstitutional feature. Where the main object intended to be effected by it is constitutional, and the objectionable feature can be exscinded without at all affecting that object, it is entirely settled that the statute is operative for all purposes except that in which it comes in conflict

with the fundamental law. This rule has been so frequently declared and acted upon by the courts of this state, as to be entirely familiar to every practitioner."

With this rule of statutory construction in mind we now approach the consideration of the various grounds of appeal upon which counsel of appellant makes his attack upon the constitutionality of the statute.

In support of the broad contention that the statute is unconstitutional, counsel adds a general assertion that the act permits the deprivation of property without due process of law in contravention of section 1, article 14 of the amendment to the constitution of the United States. The gist of the argument to support this claim is that the statute in permitting a person, who has acquired a lien upon a chattel and lets it go out of his possession, to retake the same wherever he may find it in this state, might prejudicially affect the rights of a third party, who ignorant of the existing lien, had in good faith and for a valuable consideration acquired a property interest therein. But no such case is before us for decision. We cannot indulge the presumption that a court will place a construction upon the statute so that it will operate to deprive a person of his property without due process of law. There is nothing in the language of the act itself from which any such legislative declaration or intent may be properly inferred.

Counsel of appellant seems to have taken it for granted that the failure of the statute to make any provision for registration of the transaction in some official book of record where a chattel to which a lien has been attached, is permitted by the lienor to go out of his possession invalidates the statute and renders it unconstitutional. This is clearly not so. The cases cited in the appellant's brief support no such proposition, and are not in point. The case of *Fishell* v. *Morris*, 57 *Conn.* 547; 18 *Atl. Rep.* 717, rather tends to support the validity of the statute than otherwise. On *p.* 552, Chief Justice Andrews, discussing the statute there under review, says, "It says that the animals, naming the kind, 'shall be subject to a lien for the price of such keeping in favor of

the person keeping the same until such debt is paid.' This is the exact idea of the common law, the right of a creditor to detain the property of his debtor in his possession till the debt is paid."

Reading sections 1 and 2 of the act, under consideration, together, it is clear from their language that the authority conferred upon the lienor to retain "such motor vehicle at any time it is lawfully in his possession until such sum is paid," includes a motor vehicle, which the lienor has allowed to go out of his possession and subsequently retakes to enforce his lien.

It is to be observed that the statute is in some respects declaratory of the common law right of lien. It extends this right of lien to other conditions in business life than those that existed at common law. Thus, for example, it gives the garage keeper a lien for the storing and maintaining of motor vehicles, a present popular means of conveyance unknown to the common law, and which has in a great measure supplanted the horse and wagon and revolutionized the mode of transportation; it gives a right of lien for furnishing gasoline, accessories or other supplies for motor vehicles, for which no right of lien could have properly existed at common law.

The innovation which the statute makes in the common law is neither startling nor novel in so far as it enlarges and extends the right of lien to conditions not included at common law, but is in line with the natural progress of the law to meet necessities arising from new business conditions; and the wisdom of this species of legislation is not a court question, but is peculiarly within the province of the lawmaking power to determine.

In *White* v. *Smith,* 44 *N. J. L.* 105, Mr. Justice Depue (on *p.* 106) says, "The effort to subject common law liens to uniform rules must necessarily be unsuccessful. Derived from the civil law, and founded on considerations of equity and justice, the rules by which they are governed vary with the grounds, on which such rights are given."

The only radical change from the common law effected, by the statute, under consideration, is that in the cases mentioned in the statute, the lienor does not lose his right of lien by permitting the property to which his lien has attached to go out of his possession, but he may retake the same and enforce his lien.

At common law the lienor lost his right of lien if he permitted the property to go out of his possession.

What vested right of a person having a property interest in a motor vehicle is violated by subjecting such vehicle to the right of lien, irrespective of the fact whether the lienor retains possession of the vehicle, has not been made clear to us. The prime object of the legislation we are considering is to secure the payment of a debt incurred, by the owner or his representative, for the benefit of his property and the use to which it is put. It is, therefore, bordering upon the absurd to contend that this legislation invades property rights or authorizes the taking of property without due process of law. The fact that a third party, ignorant of the lien upon the property, might in good faith, and for a valuable consideration acquire an interest therein, while such property was out of the possession of the lienor and in the possession of the owner or his representative, cannot, as has already been observed, affect the validity of the statute, as this was a matter falling purely within the exercise of the wisdom and judgment of the legislature when the law was enacted.

What was expressed by the Supreme Court of the United States, in *Provident Institution, &c.,* v. *Mayor, &c., of Jersey City,* 113 *U. S.* 506, speaking through Mr. Justice Bradley (on *p.* 515), is apposite to the question under consideration. The learned justice said, "Even if the water rents in question cannot be regarded as taxes, nor as special assessments for benefits arising from a public improvement, it is still by no means clear that the giving to them a priority of lien over all other incumbrances upon the property served with the water would be repugnant to the constitution of the United States. The law which gives to the last maritime

liens priority over earlier liens in point of time, is based on principles of acknowledged justice. That which is given for the preservation or betterment of the common pledge is in natural equity fairly entitled to the first rank in the tableau of claims. Mechanics lien laws stand on the same basis of natural justice. We are not prepared to say that a legislative act giving preference to such liens over those already created by mortgage, judgment or attachment, would be repugnant to the constitution of the United States."

It is further urged that since the second section of the statute declares that the property shall be subject to a lien until the charges on the property are paid, it, therefore, virtually deprives the owner of his property, as there is no obstacle in the way of the lienor to prevent him from retaining the property for an indefinite time. But this reasoning has not the merit even of being specious. The owner is not deprived of his property, except by his own act. He has the privilege of paying the charges on the property and thus discharge the lien. He may, if he sees fit, contest the validity of the lien by bringing an action of replevin or trover, as was done in this case.

The legal situation does not differ from that existing at common law.

In the absence of any statute or agreement between the parties conferring the power upon the lienor to sell the chattel under the lien, the chattel cannot be lawfully sold, as no power of sale is implied from the transaction itself. *Doane* v. *Russell,* 3 *Gray* 382 (*opinion per Chief Justice Shaw*) ; *Briggs* v. *Boston & L. R. Co.,* 6 *Allen* 246; *Aldine Mfg. Co.* v. *Phillips,* 42 *L. R. A.* 531. In this last cited case, Mr. Justice Hooker (on *p.* 534), after quoting from leading English and American cases on the subject, says, "While the doctrine of these cases—*i. e.,* that the creditor cannot sell the property— is indisputable, there was no impediment to the recovery of judgment and sale of the property, as well as any other property of the debtor on execution."

Keeping in view that the object sought by the statute is for the better protection of garage keepers and automobile

repairmen, it is manifest that sections 1 and 2 can fully accomplish this purpose, and that the statute is complete and workable without the aid of section 3. Therefore, from what has been said, it is apparent that we are not required to pass upon the legal efficacy of the third section of the act, but, nevertheless, it may prove useful to say in this connection that the ground of attack made upon it, by appellant, that it is unconstitutional because it leaves the time indefinite when the lienor is required to sell the property held or seized, is not sustained by a plain and fair interpretation of this section. The section expressly provides that such property shall "after the expiration of thirty days from the date of such detention," that is from the time the owner refuses to pay the lien charges, or from the time such property is seized (as the case may be), after being out of the lienor's possession, be sold at public auction, upon notice, &c. It does not require personal notice to be given to the owner, but provides for notice by publication, &c.

There is no material difference in this respect from the provision of section 6 of the act concerning distress for rent, which has been on our statute books, almost in its original form, since 1795. *Pat. L., p.* 173; *Nix. Dig., p.* 240; *Rev. of 1877, p.* 609; *Comp. Stat., p.* 1940.

Evidently, the thirty days required of the lienor to hold the chattel after the detention of it has actually taken place is for the purpose of affording the owner an opportunity to pay the lien charges, or, if he intends to dispute the same, to resort to a writ of replevin. In the Distress act ten days is given to the tenant or owner of the goods to replevy the same. After the expiration of the ten days the landlord may take steps to sell the property distrained upon, but the statute is silent, as here, how soon after the expiration of the ten days such steps shall be taken. In either case a fair construction, for the purpose of carrying into effect the legislative intent, would be that the requirements of the section must be performed with due diligence and within a reasonable time.

It is next asserted that the statute is unconstitutional, in that it is a law impairing the obligation of contracts contrary to article 1, section 10, paragraph 1 of the constitution of the United States, as well as to article 4, section 7, paragraph 3 of the constitution of New Jersey.

This objection is without merit. The transaction under consideration occurred after the passage of the statute. In the absence of any words expressing a contrary intention, a statute will be construed to operate prospectively.

In *Denny* v. *Bennett,* 128 *U. S.* 489; 32 *L. Ed.* 491, it was held:

"1. State statutes, limiting the right of a creditor to enforce his claims against the property of his debtor, which are in existence at the time a contract is made, are not void as impairing the obligation of the contract.

"2. The inhibition of the Constitution against impairing the obligation of contracts is wholly prospective; the States may legislate, as to contracts thereafter made, as they see fit. It is only those in existence when the hostile law is passed that are protected from its effect.

"3. The established construction of the Constitution of the United States against the impairing the obligation of contracts requires that statutes of this class shall be construed to be a part of all contracts made when they are in existence, and therefore cannot be held to impair their obligation."

The same court in *Cross Lake, &c., Club* v. *Louisiana,* 224 *U. S.* 632; 56 *L. Ed.* 924, said (at *p.* 638, *L. Ed.* 928), that the clause in the federal constitution providing that no state shall pass any law impairing the obligation of contracts as its terms disclose, is not directed against all impairment of contract obligations, but only such as result from a subsequent exertion of the legislative power of the state.

Lastly, counsel of appellant attacks the constitutionality of the act upon the ground that it violates article 4, section 7, paragraph 4 of the state constitution, which declares that

every law shall embrace but one object and that shall be expressed in the title.

This contention is plainly without merit. The title of the act sets out fully its general object. No more than this is required. In *State Board of Health* v. *Phillipsburg*, 83 *N. J. Eq.* 403, Chancellor Walker held, "While the constitution, article 4, section 7, placitum 4, provides that 'every law shall embrace but one object and that shall be expressed in its title,' the meaning is that the leading subject of a statute should be fairly expressed in a statute; but the means or instruments by which the general object is to be attained, or matters merely incidental to it, are not a necessary part of the title, the words 'subject' and 'object' with regard to this constitutional provision having come to be regarded as synonymous." This case was affirmed, especially upon this point, by this court, in 85 *N. J. Eq.* 161.

As a result of the views expressed herein on the constitutionality of the act assailed by the appellants, the judgment entered in the court below in favor of the defendant below against the plaintiff below, on the counter-claim, is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 14.

*For reversal*—None.