211 N.J. Super. 231 (1986)
511 A.2d 709
ASSOCIATES COMMERCIAL CORPORATION, PLAINTIFF-RESPONDENT,
v.
TEGENDRA WALLIA, DEFENDANT, JOHNSON & TOWERS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 20, 1986.
Decided June 20, 1986.
*233 Before Judges KING, O'BRIEN and SIMPSON.
Zink, Brown, Baumgartner & Cutts, attorneys for appellant (William J. Cutts, on the brief).
Farr, Wolf, Rizzi & Lyons, attorneys for respondent (Bari J. Gambacorta, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case involves the issue of priority between a perfected security interest under the Uniform Commercial Code and a garage-keeper's or common-law artisan's lien. We conclude that the perfected security interest has priority over the claim of the garage-keeper and affirm Judge Tomlin.
This is the procedural and factual background. In June 1984 plaintiff Associates Commercial Corporation (Associates) filed a complaint against Johnson & Tower's, Inc. (J & T) alleging these facts. Defendant Wallia was the owner of a 1980 Ford tractor used to pull trailers. Associates previously had acquired a perfected security interest in this vehicle under Article 9 of the UCC. On November 16, 1983 Wallia brought the *234 tractor to J & T for repairs. By December 14 the repairs had been completed but Wallia failed to pay for them so J & T retained possession of the tractor. Then Wallia defaulted on the monthly payments due Associates for March, April and May of 1984. Under the financing agreement these defaults entitled Associates to immediate payment of the unpaid balance and to possession of the vehicle. Associates demanded possession from J & T which refused to comply. Associates sued for replevin or alternatively for damages of $33,276.96 for conversion. After filing of the answer, the parties agreed that Associates would post a $8,500 bond and obtain possession of the tractor and the parties would settle the priority dispute on cross-motions for summary judgment. R. 4:46. On the cross-motions, Judge Tomlin ruled in Associates favor and J & T now appeals.
On this appeal J & T raises a number of issues: it claims that (1) the entire garage-keeper's lien act, N.J.S.A. 2A:44-20 to 31, has previously been held unconstitutional in all respects, (2) even if not unconstitutional in its entirety, the lien-priority provisions in N.J.S.A. 2A:44-21 should be declared invalid, (3) it is entitled to an artisan's common-law lien, (4) if so, it claims that an artisan's common-law lien enjoys priority over a recorded, perfected security interest under the UCC, and (5) that Associates have been unjustly enriched at J & T's expense.

I
Associates contends that the Garage Keeper's Lien Act, N.J.S.A. 2A:44-20 to 31, has previously been held unconstitutional "in its entirety" by both the New Jersey and federal courts. The lien priority issue centers around N.J.S.A. 2A:44-21, which provides
A garage keeper who shall store, maintain, keep or repair a motor vehicle or furnish gasoline, accessories or other supplies therefor, at the request or with the consent of the owner or his representative, shall have a lien upon the motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle or for furnishing gasoline, accessories *235 or other supplies therefor, and may, without process of law, detain the same at any time it is lawfully in his possession until the sum is paid.
The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded or a prior security interest perfected in accordance with chapter 9 of Title 12A of the New Jersey Statutes.
J & T contends that in Whitmore v. N.J. Div. of Motor Vehicles, 137 N.J. Super. 492 (Ch.Div. 1975), Judge Furman declared the "entire" Garage Keeper's Lien Act unconstitutional because of what he said in the final sentence of his opinion

N.J.S.A. 2A:44-20 et seq. is held to be unconstitutional under the Fourteenth Amendment in failing to afford to all automobile owners the opportunity to be heard judicially prior to divestment of title [by public sale of the automobile]. [137 N.J. Super. at 500,].
Defendant focuses exclusively on Judge Furman's use of the phrase N.J.S.A. 2A:44-20 "et seq." to support its contention that Whitmore declared the entire Garage Keeper's Lien Act (i.e., N.J.S.A. 2A:44-20 to 31) unconstitutional. We disagree. A close analysis of Whitmore reveals that the lien priority provision of N.J.S.A. 2A:44-21 were not encompassed within Judge Furman's unconstitutionality holding.
At the outset of his opinion, Judge Furman specifically said that the constitutionality of the "public sale provisions of the Garage Keepers Lien Act, N.J.S.A. 2A:44-20 et seq." 137 N.J. Super. at 494-495 was "at issue" because the plaintiff-motor vehicle owners attacked the "validity of N.J.S.A. 2A:44-29, 30, 31 which provide for a public sale [of a motor vehicle] after 30 days' retention by the garage keeper." Further, Judge Furman specifically said the garage keeper's "possessory lien until payment for repairs made to a motor vehicle" was "not challenged in this action." Id. at 495. Finally, while Judge Furman noted that in Lee v. Cooper (unreported 1974 opinion in the United States District Court for New Jersey) Judge Barlow had "specifically adjudicated the unconstitutionality of N.J.S.A. 2A:44-20 et seq., both as to its possessory lien and public sale provisions," Judge Furman held that the Chancery Division of the New Jersey Superior Court was "not compelled to adhere to *236 that decision, even on a federal constitutional issue." Id. at 498.
Judge Furman then noted that, if the motor vehicle's owner wanted to avoid the consequences of the public sale provisions of the act (i.e., N.J.S.A. 2A:44-29, 30 and 31), he had to utilize the "alternative procedure prior to the expiration of 30 days ... under N.J.S.A. 2A:44-23, 24, 25, 26 and 27", which procedure in essence required the owner to post "the entire disputed garage keeper's bill or a double bond, with court costs, prior to a public sale." Id. at 495, 499. However, Judge Furman found that the alternative statutory remedy in N.J.S.A. 2A:44-23 to 27 was "blocked to the owners of automobiles who dispute their garage bills in good faith and are without sufficient funds to advance the disputed excess in cash or to pay the premium on a double bond." Id. at 499-500. Therefore, Judge Furman ruled that the entire-bill or double-bond posting "prerequisite" in the alternative statutory procedure (i.e., N.J.S.A. 2A:44-23 to 27) was "not a reasonable incident to ownership of an automobile." Id. at 499, 349 A.2d 560. Therefore, as noted above, he concluded his opinion in Whitmore as follows

N.J.S.A. 2A:44-20 et seq. is held to be unconstitutional under the Fourteenth Amendment in failing to afford to all automobile owners the opportunity to be heard judicially prior to divestment of title [by public sale]. [137 N.J. Super. at 500].
In his February 1, 1985 oral decision in the case before us, Judge Tomlin ruled that "the provisions that were attacked in the Whitmore decision" (i.e., N.J.S.A. 2A:44-23 to 27 and 29 to 31) were "such that they can be isolated." Therefore, he found that the "order of priorities" embodied in N.J.S.A. 2A:44-21 was "preserved" despite Judge Furman's statement in Whitmore that N.J.S.A. 2A:44-20 "et seq." was unconstitutional. Whitmore, supra, 137 N.J. Super. at 500.
We agree. The lien order-of-priority provisions of N.J.S.A. 2A:44-21 were not encompassed in Judge Furman's unconstitutionality decision in Whitmore. This is confirmed by examining In re Bill Ridgway, Inc., 4 B.R. 351 (Bankr.D.N.J. 1980). In Ridgway, Bankruptcy Court Judge Lipkin noted that in Whitmore *237 "the State Court ... held that the N.J. Lien Act, N.J.S.A. 2A:44-20 et seq., 23 to 27, 29 to 3[1], is unconstitutional under the Fourteenth Amendment of the United States Constitution." Ridgway, supra, 4 B.R. at 352. In this aspect, J & T contends that "federal courts" have declared the Garage Keeper's Lien Act unconstitutional in its entirety. This is not wholly accurate. Defendant is correct in contending that, in Ridgway, the United States Bankruptcy Court for the District of New Jersey implicitly held that the Garage Keeper's Lien Act was "totally invalid." But close analysis of Ridgway reveals a flaw in this reasoning.
In Ridgway, Judge Lipkin first noted Judge Furman's observation in Whitmore that, in Lee v. Cooper, Judge Barlow had "specifically adjudicated the unconstitutionality of N.J.S.A. 2A:44-20 et seq., both as to its possessory lien and public sale provisions." 4 B.R. at 353. And, while Judge Lipkin did not dispute Judge Furman's holding that a New Jersey state court was not compelled to adhere to a decision of the United States District Court for the District of New Jersey, Judge Lipkin noted that the United States Bankruptcy Court for the District of New Jersey was "a Federal Court in the same district as that in which Judge Barlow presided." Ibid. Therefore, "under the doctrine of stare decisis," Judge Lipkin said that he had to "follow the decision of the federal judge." Ibid. Consequently, Judge Lipkin declared the "asserted lien" of the subject garage keeper "under the provisions of New Jersey Statute 2A:44-21" to be "invalid," and ruled that this garage keeper had "no lien"  only an "unsecured claim." Id. at 352-354.
Of course, as Judge Furman pointed out in Whitmore, supra, in our dual system a New Jersey state court is not compelled to adhere to decisions of lower federal courts on federal constitutional issues. 137 N.J. Super. at 498. Accord, State v. Norflett, 67 N.J. 268, 286 (1975); State v. Coleman, 46 N.J. 16, 36 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966). Consequently, neither the District Court's unreported *238 1974 decision in Lee v. Cooper nor the Bankruptcy Court's 1980 decision in Ridgway is binding on us.
Moreover, Judge Lipkin in Ridgway may have read Judge Barlow's opinion in Lee v. Cooper too broadly. As both Judge Furman and Judge Lipkin noted, in Lee v. Cooper, Judge Barlow held "N.J.S.A. 2A:44-20 et seq." unconstitutional as to its "possessory lien" and "public sale" provisions. Whitmore, 137 N.J. Super. at 498; Ridgway, 4 B.R. at 353. However, the "possessory lien" portion of N.J.S.A. 2A:44-21 is wholly contained within the first paragraph of this two-paragraph statute
A garage keeper who shall store, maintain, keep or repair a motor vehicle ... shall have a lien upon the motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle ... and may, without process of law, detain the same at any time it is lawfully in his possession until the sum is paid. [Emphasis supplied].
Thus, in holding unconstitutional the "possessory" lien portion of N.J.S.A. 2A:44-21, Judge Barlow in Lee v. Cooper apparently only invalidated the garage keeper's statutory right under N.J.S.A. 2A:44-21 to, "without process of law, detain the... [motor vehicle] at any time it is lawfully in his possession until the sum [due] is paid." But this still left constitutionally intact the garage keeper's N.J.S.A. 2A:44-21 non-possessory "lien upon the motor vehicle ... for the sum due for ... repairing of such motor vehicle," which lien is not "superior to" nor can "affect" any lien, title or interest (1) under a prior conditional sale or chattel mortgage properly recorded, or (2) under a prior security interest perfected pursuant to N.J.S.A. 12A:9-101 et seq.
In short, while Judge Lipkin in Ridgway did implicitly declare the Garage Keeper's Lien Act unconstitutional and invalid in its entirety, he did so solely based on Judge Barlow's prior decision in Lee v. Cooper. But Judge Barlow apparently did not invalidate all of the Garage Keeper's Lien Act. Therefore, Ridgway in the final analysis adds little or nothing to advance J & T's position.
In conclusion, we agree with Judge Tomlin's ruling that the lien "order of priorities" embodied in N.J.S.A. 2A:44-21 is *239 "preserved", despite the prior rulings in Lee v. Cooper and Whitmore declaring unconstitutional other sections of N.J.S.A. 2A:44-20 et seq. and other portions of N.J.S.A. 2A:44-21, and the ruling in Ridgway implicitly invalidating all of the Garage Keeper's Lien Act. We find no merit to defendant's contention that this act has been held unconstitutional in its entirety.

II
J & T next contends that if the "priority" provisions in N.J.S.A. 2A:44-21 are still constitutionally valid, the Legislature never intended that a garage keeper's lien rights should still be subordinated to a prior secured creditor once the sale provisions of the Garage Keeper's Lien Act were declared unconstitutional. According to J & T, once the sale provisions of the act were declared invalid, a garage keeper had "no efficient or meaningful remedy" by which he could "either (1) force the owner to pay the bill, or (2) sell the vehicle." Therefore, J & T asserts that, if the Legislature had foreseen the unconstitutionality of the act's sale provisions, it would never have intended the act's priority provisions in N.J.S.A. 2A:44-21 to "continue in effect."
J & T perhaps overlooks that, subordinated or not, even a non-possessory lien is better than no lien at all. As plaintiff points out, "the garagekeeper does not lose his lien [under N.J.S.A. 2A:44-21] if he loses possession." See N.J.S.A. 2A:44-22. Further, while the garage-keeper's N.J.S.A. 2A:44-21 non-possessory lien may not be very valuable should a prior secured creditor's lien exist, this would be the case in any event (i.e., even if the sale provisions had not been declared unconstitutional), and in the absence of such a prior secured creditor, the garage-keeper's lien has priority over later secured creditors and all unsecured creditors  a circumstance not without some value to the garage keeper. We reject defendant's non-severability contention that "[h]ad the Legislature foreseen the unconstitutionality of the Act's sale provisions," it would have viewed the remaining garage-keeper's lien under N.J.S.A. *240 2A:44-21 as so "valueless" to the garage keeper that the Legislature "would have neither expected nor desired the Act's priority provisions [in N.J.S.A. 2A:44-21] to have remained effective."

III
As a corollary to II, J & T contends that, assuming that the entire Garage Keeper's Lien Act is unconstitutional, non-severable and wholly void, defendant still "may claim its common law possessory artisan's lien recognized under New Jersey law." In response, Associates asserts that even if that the entire Garage Keeper's Lien Act is unconstitutional, defendant has "no right to a common law artisan's lien." Associates is correct.
In Crucible Steel Co. v. Polack Tyre & Rubber Co., 92 N.J.L. 221 (E. & A. 1918), Justice Kalisch held that the 1915 Garage Keeper's Lien Act extends the "common law right of lien" to "other conditions in business life than those that existed at common law." Id. at 227. Thus, he noted that the 1915 act "gives the garage keeper a lien for the storing and maintaining of motor vehicles" (a means of conveyance "unknown to the common law") and "for furnishing gasoline, accessories or other supplies for motor vehicles" (for which "no right of lien could have properly existed at common law"). Ibid. Consequently, Justice Kalisch held that the Garage Keeper's Lien Act "enlarges and extends the right of lien to conditions not included at common law." Ibid. Accord B.C.S. Corp. v. Frick, 19 N.J. Misc. 129, 130-131, 18 A.2d 560 (D.Ct. 1941) (motor vehicles and garage keepers were "unknown at common law"; therefore, garage keepers are not entitled to a lien "as a common law lienor" for labor and materials furnished in the repair of motor vehicles).
In Ferrante v. Foley, 49 N.J. 432 (1967), the Supreme Court held that, under the Garage Keeper's Lien Act, a garage keeper "can claim only the statutory lien on motor vehicles upon which it worked." Id. at 437. And the Court noted that a garage keeper's lien under the act "differs from the artisan's [common *241 law] lien in many respects." Ibid. One difference was that a garage keeper's lien under the act "applies only to motor vehicles." Ibid. Another difference was that, if the garage keeper worked on a motor vehicle, he "had only a garage keeper's lien." Id. at 438. Of course, the Court noted that, if the garage keeper worked on personal property "other than motor vehicles, he may still claim his common-law right to an artisan's lien." Id. at 437. Accord Diesel v. Associates Fin. Serv., 125 N.J. Super. 53, 54-55 (App.Div. 1973) (the Garage Keeper's Lien Act is "exclusive and in lieu of the common law [artisan's] lien" with regard to motor vehicles; the "only lien" a garage keeper has for repairing a motor vehicle is "that afforded by the Garage Keeper's Lien Act, N.J.S.A. 2A:44-21") and Onondaga Truck Lease Inc. v. Hovell, 107 N.J. Super. 463, 465 (Cty.Ct. 1969), aff'd 111 N.J. Super. 549 (App.Div. 1970) (the Garage Keeper's Lien Act is the "sole source of authority" for creating a lien in favor of one providing services for motor vehicles; without this statute such a person is "not entitled to a lien"). See also Whitmore, supra, 137 N.J. Super. at 494, 496 (the Garage Keeper's Lien Act is an "extension of" and "enlarges on" the artisan's common law lien), and Ridgway, 4 B.R. at 352 (the Garage Keeper's lien for body work done on the automobile was asserted "not under common law principles, but rather by force of a state statute [emphasis in original]").
Consequently, we see no merit to J & T's contention that, with regard to its repairs to the subject motor vehicle, it may claim a common-law artisan's lien because once the Lien Act is invalidated, its common-law artisan's lien is "revived."

IV
Defendant J & T further contends in a slightly different vein that, by expending labor, skill and materials in the improvement of the tractor, it "enhanced" the vehicle's value and therefore may claim an "artisan's possessory lien which takes *242 priority over the interests of a secured creditor under common law principles."
While in New Jersey there is "no statute establishing an artisan's lien," New Jersey recognizes the "common-law possessory artisan's lien." Ferrante, 49 N.J. at 436. See N.J.S.A. 2A:44-32. To achieve the status of the holder of an artisan's common-law lien "with respect to personal property," the artisan, by his labor and skill, must contribute to the "improvement" of the property. Ferrante, 49 N.J. at 436-437. If the artisan does so, he "acquires the right to a specific lien on the property" and "retains this interest in the property until paid." Id. at 437.
Before the adoption of the Uniform Commercial Code (N.J.S.A. 12A:1-101 et seq.), by judicial construction the holder of an artisan's lien took priority over a duly-recorded security interest. Id. at 436. See also New Jersey Study Comment to N.J.S.A. 12A:9-310 at 474. Under N.J.S.A. 12A:9-310, the holder of a lien arising from work "takes priority over [the holder of] a perfected security interest unless the lien is statutory and the statute expressly provides otherwise." N.J.S.A. 12A:9-310.
An artisan's lien is a "common-law lien rather than a statutory lien." Ferrante, 49 N.J. at 436. But, as noted in III, a garage keeper who performs work on an automobile "has only a garage keeper's lien" under the Garage Keeper's Lien Act and "can claim only the statutory lien." Id. at 437-438. Thus, only if the personal property worked on is "not a motor vehicle" can a garage keeper claim the status of the holder of an artisan's lien, and the priority enjoyed by it. Id. at 438.
Since defendant concedes that the subject personal property here is a motor vehicle, it cannot claim an artisan's lien. Further, the "priority over a perfected security interest" established in N.J.S.A. 12A:9-310 cannot be applied to the garage keeper's lien under N.J.S.A. 2A:44-21, because (1) N.J.S.A. 2A:44-21 expressly provides that the garage keeper's statutory *243 lien "shall not be superior to, nor affect a lien, title or interest of a person held by virtue of ... a prior security interest perfected in accordance with chapter 9 of Title 12A," and (2) N.J.S.A. 12A:9-310 expressly provides that a lien given by "statute or rule of law" for materials or services furnished with respect to "goods subject to a security interest" has priority over a perfected security interest unless (a) "the lien is statutory" and, (b) that statute "expressly provides otherwise". An "express statutory provision," such as N.J.S.A. 2A:44-21 "overrides the rule of § 9-310." New Jersey Study Comment to N.J.S.A. 12A:9-310 at 474. Thus even if defendant did enhance the tractor's value, it may not claim an artisan's lien at common law and its attendant priorities.

V
Defendant finally contends that, if plaintiff is allowed to prevail, it will be "unjustly enriched" at defendant's expense. On November 16, 1983 Wallia delivered the subject tractor to defendant for repairs. By December 14, 1983 defendant had repaired it, for which repairs defendant presented Wallia with a bill for $8,372.09. Wallia failed to pay defendant's bill and also failed to pay the conditional sale installment payments due plaintiff on March 28, April 28 and May 28, 1984. Pursuant to the July 17, 1984 consent order defendant released the tractor to plaintiff, who sold it on October 7, 1984 for $25,000 which did not cover the amount due plaintiff.
The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App.Div. 1966). "The key words are enrich and unjustly [Emphasis in original]." Id. at 109. To recover under this doctrine, the plaintiff must prove that the defendant "received a benefit, and that retention of the benefit without payment therefor would be unjust." Ibid.
*244 Defendant contends that, when Wallia delivered the tractor to defendant on November 16, 1983, it was in "nonfunctioning" condition but asserts that by December 14, 1983 it had repaired the tractor "so that it was once more functional." Furthermore, defendant maintains that, if plaintiff had sold the truck on October 7, 1984 in its pre-repair, nonfunctioning condition, plaintiff would have received "substantially less" than the $25,000 recovered at that sale. Therefore, defendant contends that, by repairing the tractor between November 16 and December 14, 1983, it did "enhance the value" of the tractor "in the amount of $8,372.09."
While plaintiff concedes that defendant's bill for these repairs was $8,372.09 it correctly notes that "no evidence has been presented ... as to how much these repairs enhanced the vehicle in question." According to plaintiff, it is a fallacy to presume that the "value of repairs" to a motor vehicle will be fully "realized" at a wholesale auction sale of that vehicle. For example, plaintiff points out that the repairs may not be "necessary" or may be "ill-considered" and worth "substantially less" than the repair bill value in the wholesale auction sale marketplace.
It is true that defendant has not proven that its repairs enhanced the sale value of the tractor by the full amount of its $8,372.09 repair bill. However, it is obvious that a functioning tractor will bring more at an auction sale than a nonfunctioning one. Therefore, while of undetermined value, plaintiff "received a benefit" from defendant's repairs. Callano, 91 N.J. Super. at 109.
However, the real question is whether plaintiff's retention of that benefit without payment therefore "would be unjust." Ibid. A common thread running throughout successful invocation of the doctrine of unjust enrichment is "that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Ibid.
*245 According to defendant, Wallia's tractor had broken down in New Jersey and was transported to defendant's place of business on November 16, 1983 for repairs. And defendant concedes (1) that, on or about November 16, 1983 "Wallia requested that the truck be fixed"; (2) that, "pursuant to the request of the truck's owner, Tegendra Wallia," defendant completed the repairs by December 14, 1983; (3) that defendant had completed these repairs "with good faith expectation that Wallia would pay the repair bill as promised" and (4) that "Wallia defaulted on the repair bill." Further, defendant concedes (a) that plaintiff had not ordered the November-December 1983 repairs, and (b) that Wallia did not begin to default on the monthly conditional sale contract installments due plaintiff until March 28, 1984, over three months after defendant had completed and billed Wallia for the repairs.
Thus, defendant never expected remuneration from plaintiff for the repairs Wallia authorized on November 16, 1983. Likewise, even if defendant had known of plaintiff's security interest, "at the time the benefit was conferred" between November 16 and December 14, 1983, defendant still would not have then expected remuneration from plaintiff, because Wallia did not begin to default on the installment payments due plaintiff until March 28, 1984. In conclusion, while plaintiff may have received a benefit from defendant's repairs to the tractor, we do not see how plaintiff's retention of such benefit without payment therefor is "inequitable or unjust." Callano, 91 N.J. Super. at 109.
J & T could have anticipated that the vehicle was subject to a financing statement for a substantial sum, made some inquiry, and taken steps to protect its position before proceeding on this repair work. It did not do so. Associates was a bona fide financer and extender of credit which properly relied on the validity of its perfected security interest. We see no reason to apply common-law restitution principles which conflict with the statutory scheme.
Affirmed.