**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6032-17T4

EXCELSIOR LUMBER CO., INC.,

     Plaintiff,

v.

VAN PEENEN LANDSCAPE
CONTRACTORS, and VAN
PEENEN CONTRACTORS, INC.,

     Defendants,

and

SECOND GEN CATERING CO.,
INC., and 691 POMPTON
AVENUE REALTY, LLC,

     Defendants-Respondents.

_____

SECOND GEN CATERING CO.,
INC., and 691 POMPTON
AVENUE REALTY, LLC,

     Plaintiffs-Respondents,

v.

RAYMOND VAN PEENEN, SUSAN
A. VAN PEENEN, VAN PEENEN
CONTRACTORS, INC., VAN
PEENEN CONSTRUCTION, LLC,
VAN PEENEN LANDSCAPE
CONTRACTORS, INC., ASHLIN
EARTH MATERIALS, INC.,
WILKSTONE, LLC, WOY TECH, INC.,
EXCELSIOR LUMBER COMPANY,
INC., TRANE, U.S., INC., UNITED
RENTALS NORTH AMERICA,
INC., UNITED AUTOMATIC FIRE
SPRINKLER, INC., and JP MORGAN
CHASE BANK, N.A.,

     Defendants,

and

TRI-STATE FOLDING
PARTITIONS, INC.,

     Defendant-Appellant.

_____

Argued telephonically June 7, 2019 – Decided July 9, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket Nos. L-5989-11 and L-6194-11.

Robert K. Chewning argued the cause for appellant (McLaughlin & Nardi, LLC, attorneys; Maurice W. McLaughlin and Robert K. Chewning, on the briefs).

A-6032-17T4

Theodore S. Smith argued the cause for respondents (Drinker Biddle & Reath, LLP, attorneys; Kenneth J. Wilbur and Theodore S. Smith, on the brief).

PER CURIAM

Defendant Tri-State Folding Partitions, Inc. (Tri-State) appeals from two orders, March 13, 2015 and August 6, 2018, granting summary judgment to plaintiffs Second Gen Catering Co., Inc. and 691 Pompton Avenue Realty, LLC (collectively, the Grove Owners). We affirm both orders.

In October 2009, the Grove Owners hired a general contractor, Van Peenen Contractors, Inc. (Van Peenen), to construct a banquet and catering facility. The original contract price to construct the banquet facility was $13,801,732. The Grove Owners subsequently expanded the scope of Van Peenen's construction work, agreeing to an increased contract price of $15,934,567.[1]

Van Peenen invoiced the Grove Owners for completed construction work and submitted applications for payment. On February 24, 2011, Van Peenen submitted payment application No. 48.[2] In that application, Van Peenen

---

[1] Tri-State, one of many contractors hired by Van Peenen to complete the banquet facility, installed folding partitions.

[2] Based on subsequent events, payment application No. 48 was the last request for payment submitted to the Grove Owners by Van Peenen.

A-6032-17T4

certified the total contract price was $15,470,000, and claimed the Grove Owners had a balance due of $419,337.90.

In May 2011, several subcontractors alleged Van Peenen failed to pay them and filed construction liens against the banquet facility. In its June 2, 2011 construction lien, Tri-State asserted it was owed $169,920.50 by Van Peenen. Based on the lien claims, on June 7, 2011, the Grove Owners terminated the contract with Van Peenen.

The Grove Owners filed a complaint against Van Peenen alleging fraudulent misrepresentation, conversion, violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, fraudulent conveyance, breach of contract, and other claims. In the complaint, the Grove Owners also sought to discharge the construction liens filed by the subcontractors.[3]

Tri-State filed an answer and counterclaim. Tri-State alleged it was entitled to payment from the Grove Owners based on breach of contract, unjust enrichment, quantum meruit, and promissory estoppel.

After the exchange of discovery, the Grove Owners filed a motion for summary judgment. The Grove Owners claimed Tri-State's construction lien

---

[3] On appeal, Tri-State is the only subcontractor pursuing its construction lien claim.

was improper because it paid Van Peenen more than the earned value of the work completed, and therefore no lien fund was available under the New Jersey Construction Lien Law (Construction Lien Law), N.J.S.A. 2A:44A-1 to -38. The Grove Owners also sought summary judgment based on the absence of any contract with Tri-State.

In opposition to the motion, Tri-State submitted certifications from its principal, Peter Mucciolo, and his son, Peter Mucciolo III. In the Mucciolo certifications, Tri-State claimed the Grove Owners orally admitted to owing money and promised to pay Tri-State upon completion of the work at the banquet facility.

The motion judge granted the Grove Owners' motion for summary judgment, finding there were no genuinely disputed material facts regarding the lack of an available lien fund, Tri-State's quasi-contractual claims, or Tri-State's claim based on promissory estoppel. Regarding Tri-State's contract claim, the judge dismissed that claim without prejudice to any "claims based on uncompensated work performed after Van Peenen's termination . . . ."

As to the lack of a lien fund, the judge determined Van Peenen was paid in full by the Grove Owners for the earned amount of the work completed prior to Van Peenen's termination. The judge found payment application No. 48

5

established the earned amount of the work at the banquet facility as of May 4, 2011, the date of the first filed lien claim, was $14,521,718.90. She also determined the Grove Owners paid Van Peenen $15,050,500, more than the earned amount of the work as of May 4, 2011, and thus no lien fund existed.

The Grove Owners produced cancelled checks, receipts, and accounting records to support the amount paid to Van Peenen as of May 4, 2011. Despite the availability of these documents for review, Tri-State failed to proffer any contrary evidence disputing the amount paid to Van Peenen by the Grove Owners for the earned work as of May 4, 2011 to establish the existence of a lien fund.

The judge also rejected Tri-State's quasi-contract claims. She found any purported agreement between the Grove Owners and Tri-State was a separate agreement from the contract between Tri-State and Van Peenen. The judge held Tri-State could not assert quasi-contract claims if it had a contract with the Grove Owners. She further explained Tri-State was not entitled to restitution based on quasi-contract "merely because the contractor with whom [it] contracted fail[ed] to pay."[4]

---

[4] In a March 13, 2015 order, the judge entered judgment in favor of Tri-State and against Van Peenen in the amount of $169,920.50, which was the amount owed by Van Peenen to Tri-State pursuant to their subcontract agreement.

In addition, the judge determined Tri-State's promissory estoppel claim failed because the Grove Owners' alleged oral agreement to pay Tri-State was a promise to be liable for the obligations of another and therefore had to be in writing in accordance with the statute of frauds.  See N.J.S.A. 25:1-15.  She also found Tri-State improperly sought to impose liability against the Grove Owners for work performed prior to Van Peenen's termination because the amount sought by Tri-State against the Grove Owners "exactly match[ed] how much [Tri-State was] seeking against Van Peenen."

The judge left open the possibility of a claim by Tri-State based on a new contract for work performed after Van Peenen's termination.

In 2015, the Grove Owners and Van Peenen agreed to submit their dispute to binding arbitration.[5]  The arbitrator awarded the Grove Owners $685,990, representing defective or incomplete work by Van Peenen.  The judge confirmed the arbitration award and entered a judgment for the Grove Owners in that amount.

---

[5]  The Grove Owners' complaint against Van Peenen claimed the work at the banquet facility was defective and did not conform to the approved plans.  The Grove Owners also asserted Van Peenen's failure to pay the subcontractors resulted in the filing of improper construction liens against the banquet facility in excess of $1,250,000.

Tri-State then pursued its claims against the Grove Owners for contract work purportedly performed by it after Van Peenen's termination. In connection with those claims, the judge required Tri-State to produce all evidence upon which it intended to rely.

In 2018, the Grove Owners moved for summary judgment. The Grove Owners argued it never had a contract with Tri-State and sought dismissal of Tri-State's only remaining claim.

Tri-State cross-moved for summary judgment, claiming the Grove Owners promised to pay Tri-State for work completed after Van Peenen was fired. Based on a certification from Peter Mucciolo, III, Tri-State asserted it had meetings with principals of the Grove Owners post-termination of the general contractor and relied on representations that Tri-State would be paid for all work.

In an August 6, 2018 order, a different motion judge granted the Grove Owners' motion for summary judgment and denied Tri-State's motion. The judge concluded Tri-State failed to adduce "competent evidence establishing a substantial factual dispute" to support a claim that the Grove Owners had a contract with Tri-State and agreed to pay Tri-State for work completed subsequent to Van Peenen's termination.

A-6032-17T4

The judge, after reviewing the 2018 summary judgment motions, found Tri-State's motion for summary judgment set forth the same facts presented to the prior judge in 2015. He compared the 2015 Mucciolo certifications to the 2018 Mucciolo certification and concluded the certifications presented the same alleged conversations in support of Tri-State's supposed new contract with the Grove Owners. The judge noted Tri-State supplied no evidence supporting the "specific nature and extent of the work promised and actually performed at the [banquet facility] pursuant to the putative new contract." The judge explained "it is impossible to conclude that Tri-State has adduced facts on this motion establishing a genuine dispute of material fact as to the existence of a new contract."

On appeal, Tri-State claims there are genuinely disputed issues of material fact precluding summary judgment in favor of the Grove Owners. Tri-State also contends it has meritorious claims against the Grove Owners based on breach of contract, quantum meruit, unjust enrichment, and promissory estoppel.

We review a trial court's decision granting summary judgment de novo, employing the same standard used by the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment should be granted only if the record demonstrates there is

"no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In determining whether a summary judgment motion was properly granted, we review the evidence, drawing "all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (citing R. 4:46-2(c)).

If no genuine issue of material fact exists, we then examine "whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs. Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We accord no deference to the trial judge's legal conclusions. Nicolas v. Mynster, 213 N.J. 463, 478 (2013).

In opposing a motion for summary judgment, a party must do more than "point[] to any fact in dispute." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995). A plaintiff's self-serving assertion devoid of evidence based on the record is insufficient to create a genuine issue of material fact for the purposes of a summary judgment motion. Martin v. Rutgers Cas. Ins. Co., 346 N.J. Super. 320, 323 (App. Div. 2002).

A-6032-17T4

We first consider Tri-State's argument that the 2015 motion judge erred in determining no lien fund existed. Tri-State claims there were disputed issues of material fact regarding the total amount the Grove Owners paid to Van Peenen as of the date of the first filed lien claim. Tri-State further contends, without reference to evidence in the record, that the Grove Owners paid Van Peenen less than the earned amount of the work as of May 4, 2011.

The primary purpose of the Construction Lien Law is to secure payment to subcontractors and others who provide work, services, or materials pursuant to a written contract. See NRG REMA, LLC v. Creative Envtl. Sols. Corp., 454 N.J. Super. 578, 587 (App. Div.), certifs. denied, 234 N.J. 577, and 235 N.J. 111 (2018). The secondary purpose of the Construction Lien Law is to protect owners from paying more than once for the same work. See L & W Supply Corp. v. DeSilva, 429 N.J. Super. 179, 183 (App. Div. 2012).

Under the Construction Lien Law, a lien fund exists if a property owner has paid the general contractor less than the value of the work completed. N.J.S.A. 2A:44A-9(a). A lien fund is limited to "the earned amount of the contract between the owner and contractor minus any payments made prior to service of a copy of the lien claim." N.J.S.A. 2A:44A-9(b)(1). "[N]o lien fund exists, if, at the time of service of a copy of the lien claim, the owner . . . has

fully paid the contractor for the work performed . . . ."  N.J.S.A. 2A:44A-9(d); see also Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 80 (2004) (holding "[b]ecause the lien fund can only be based on what is actually owed, when nothing is owed there can be no fund.")  A property owner "should never be subject to liens in an amount greater than the amount unpaid by the owner to its prime contractor at the time the lien claim is filed."  Labov Mech., Inc. v. E. Coast Power, L.L.C., 377 N.J. Super. 240, 247 (App. Div. 2005).

Here, the first construction lien was filed on May 4, 2011.  In accordance with the Construction Lien Law, the lien fund was limited to the difference between the earned amount of the contract work performed by Van Peenen and the amount paid by the Grove Owners to Van Peenen as of that date.   Based on the evidence, the judge found the earned amount of the work completed by Van Peenen as of May 4, 2011 was $14,521,718.90.  However, Van Peenen received $15,050,500 in payment from the Grove Owners as of that date, which was more than the earned amount of its work.  Because nothing was owed to Van Peenen as of May 4, 2011, the judge determined there was no available lien fund.

Having reviewed the record anew, we agree the evidence supported the judge's conclusion that the Grove Owners fully paid Van Peenen for the earned amount of the work at the banquet facility as of May 4, 2011, and therefore no

A-6032-17T4

lien fund existed.  Tri-State failed to present any competent evidence regarding a different amount paid by the Grove Owners for work performed by Van Peenen as of May 4, 2011.

We next consider Tri-State's argument that the judge erred in granting summary judgment and dismissing its contract claims against the Grove Owners. Tri-State claims there were genuinely disputed material facts that precluded summary judgment.

A contract requires an "'offer and acceptance' by the parties, and the terms of the agreement must 'be sufficiently definite [so] "that the performance to be rendered by each party can be ascertained with reasonable certainty."'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 185 (2017) (alteration in original) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).  There must be an "unqualified acceptance to conclude the manifestation of assent." Weichert Co. Realtors, 128 N.J. at 435-36 (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (1953)).

Tri-State claims it entered into an agreement with the Grove Owners after Van Peenen's termination.  Tri-State relies on the self-serving Mucciolo

certifications in support of its putative new contract with the Grove Owners.[6] The judge reviewing the 2018 summary judgment motions found no evidence of such a contract. The judge concluded Tri-State merely asserted the same statements and conversations detailed in the 2015 Mucciolo certifications to support a new and separate contract between it and the Grove Owners. He determined no new information was provided by Tri-State evidencing a new contract with the Grove Owners after Van Peenen's termination.

Based on our review of the record, no evidence supports Tri-State's claim that the Grove Owners entered into an agreement to pay Tri-State for work purportedly performed after Van Peenen's termination. Tri-State's lien claim, as well as three of the Mucciolo certifications, stated Tri-State's last work at the banquet facility was completed in May 2011, prior to Van Peenen's termination. Thus, there is no competent and admissible evidence of an offer, acceptance, and intent to be bound to the terms of any new contract between Tri-State and the Grove Owners after Van Peenen was terminated.

---

[6] There were five Mucciolo certifications submitted to the trial court – three submitted by Peter Mucciolo in 2015 when he was president of Tri-State, one submitted by Peter Mucciolo, III in 2015 when he was a Tri-State employee, and another by Peter Mucciolo, III in 2018 after he became president of Tri-State.

We next review Tri-State's argument that it is entitled to payment from the Grove Owners based on quasi-contract theories, including quantum meruit and unjust enrichment.

Quantum meruit is a form of quasi-contractual recovery that "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Starkey v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002) (quoting Weichert Co. Realtors, 128 N.J. at 437). To recover under a theory of quantum meruit, a party must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Ibid. (quoting Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994)). Courts may not impose additional contractual obligations under quasi-contract theories "where there is a valid unrescinded contract that governs their rights." Shalita v. Twp. of Washington, 270 N.J. Super. 84, 90 (App. Div. 1994).

Unjust enrichment requires a party to "show both that [the other party] received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (quoting Assocs. Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div.

1986)).  The party seeking payment under an unjust enrichment theory must also show it "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  Ibid. (quoting Wallia, 211 N.J. Super. at 244).

Based on the record, Tri-State's quantum meruit claim fails because there was never any basis for Tri-State to expect compensation from the Grove Owners for work allegedly completed after Van Peenen's termination.  Further, Tri-State had a valid and enforceable contract with Van Peenen and recovered a judgment against Van Peenen based on that contract.

Similarly, Tri-State's unjust enrichment claim fails because there is no credible evidence that Tri-State expected payment from the Grove Owners for work performed after Van Peenen was terminated.  Nor is there any proof that Tri-State performed work at the banquet facility after the general contractor was fired.

We next consider Tri-State's argument that it is entitled to payment from the Grove Owners based on promissory estoppel.  To prove a claim based on promissory estoppel, a party must show: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable

16

reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008). Here, there is no evidence that the Grove Owners promised to pay Van Peenen's contractual obligation to Tri-State. To the contrary, the evidence demonstrates the Grove Owners paid Van Peenen for Tri-State's subcontracted work.

Based on the record, we are satisfied the motion judges in 2015 and 2018 correctly dismissed Tri-State's claims. Tri-State failed to provide any credible or competent evidence establishing the requisite elements to prevail on its claims. In addition, because no lien fund existed as of the date of the first filed lien claim, dismissal of Tri-State's lien claim was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6032-17T4