817 A.2d 376

GENERAL ELECTRIC CAPITAL AUTO LEASE, PLAINTIFF–RESPONDENT, v. ALFONSO VIOLANTE, DEFENDANT.

DAVID'S TOWING SERVICE AND DAVID BRIGATI, JR.,[1] T/A DAVID'S TOWING SERVICE, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 9, 2002—Decided March 10, 2003.

---

[1] Improperly pleaded as David Bergatti, Jr.

Before Judges KESTIN, EICHEN and WEISSBARD.

*William J. Pollinger* argued the cause for appellants.

*William S. Wolfson* argued the cause for respondent (*Parker & Wolfson,* attorneys; *Mr. Wolfson,* on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

In July 1999, plaintiff, General Electric Capital Auto Lease (GECAL), sued Alfonso Violante alleging breach of an installment sales contract for a Lexus automobile and asserting a "perfected security interest" in the car.[2]  In a separate count of the complaint, GECAL also sued David's Towing Service and David Brigati, Jr. t/a David's Towing Service (collectively, "David's") for possession of the car, alleging that it had been taken to David's at Violante's behest and that it was being wrongfully held as security for the payment of the towing and storage services rendered by David's.  In its answer, David's admitted GECAL's ownership of the vehicle, asserted its contract with Violante and plaintiff's implied consent to such charges for services regarding the automobile as Violante had incurred, and stated that possession of the

---

[2] Although counts one and two of the complaint provided in the appendix to appellant's brief allege an installment sales contract and a perfected security interest, count three, from which the issues before us arise, alleges plaintiff's ownership of the vehicle. The matter has proceeded throughout as an action arising from a lease. The discrepancy is unexplained.  We regard the matter as one in which the complaint was properly amended, pursuant to *R.* 4:9–2 (Amendments to Conform to the Evidence) if not by the earlier filing of an amended complaint.  The lease is before us as part of the record on appeal.

vehicle had already been turned over to GECAL. Affirmative defenses were pleaded, including GECAL's responsibility as owner of the vehicle "for all costs of towing and storage," and GECAL's obligation to answer for the obligations incurred by its lessee.

In a combined cross-claim and counterclaim, David's asserted an entitlement to payment from GECAL as owner of the vehicle and from Violante, as the person who requested storage and repair. The pleading alleged that, on March 12, 1999, Violante had engaged David's to "retrieve a motor vehicle which had been vandalized" and to repair the damages. The repairs were not undertaken because the insurer had never inspected the vehicle and authorized the work. On April 28, 1999, in response to GECAL's inquiry about the vehicle, David's demanded payment for "pickup, towing charges and storage charges." From that time until mid-July, discussions ensued between GECAL and David's regarding their respective claims, but no resolution was reached. After the complaint was filed and served, those parties agreed that David's would return the vehicle to GECAL in exchange for GECAL's guarantee that any judgment entered in David's favor would be paid. GECAL's answer to the counterclaim asserted several affirmative defenses, including lack of authority on Violante's part to incur liability by GECAL for repairs or storage charges, and David's failure to mitigate damages by taking early, reasonable steps to determine the actual ownership of the vehicle.

On June 23, 2000, a default was entered against Violante in respect of all claims.[3] The matter proceeded on David's counterclaim against GECAL. After a case management conference, the trial court, in a letter to counsel dated September 25, 2000, identified the issues as purely questions of law, *i.e.,*

---

[3] Although the record in this appeal does not contain a copy of a default judgment entered in GECAL's favor on its deficiency claim, certifications in support of several post-judgment proceedings establish that judgment for $9,575.30 was eventually entered.

the applicability of *N.J.S.A.* 2A:44–21 regarding its availability to attach a lien to the lessor's interest without its permission. Also, the applicability of [*N.J.S.A.*] 39:10A–8 regarding an abandoned vehicle at a repair facility leased without permission of the owner.

A briefing schedule was established with a view to an argument date in November, 2000.

Oral argument occurred on November 15 and, on December 12, an "order granting summary judgment" to GECAL was entered. The judge's reasons for the ruling were expressed in a written addendum to the order.[4] He referred to language in paragraph four of the lease between GECAL and Violante, which provided:

> You will not create or let continue a lien on the Vehicle or this lease. You will tell us as soon as possible if anyone claims a lien or other interest in the Vehicle or this lease.

The judge concluded that

> [t]he possibility of a lien was contemplated in the lease and it is apparent that the lessee is responsible for the lien.

and further that

> *N.J.S.A.* 2A:44–21 clearly does not apply to leased vehicles.

* * *

> The statute does not apply on its face to the attachment of the lien because "lease" is not mentioned anywhere in the statute. The statute applies only to those vehicles which have had historically recorded lien documents with them.

> It is also implicit in the lease that the lessor understood by the language that a lien might attach to its interest and even included language that the lessee would have to indemnify it in the event a lien did attach.

> For the reasons stated above, the garage man is not entitled to payment for towing and storage by the lessor, pursuant to the statute on which they base their claim, and pursuant to the terms of the lease itself.

David's subsequent motion for reconsideration was denied.[5] Since we address fully the merits of the issues raised before the

---

[4] The ruling was limited to the questions of law presented. Questions regarding the reasonableness of David's charges, including a storage fee of $35 per day, were not addressed.

[5] Ultimately, on the basis of the default that had previously been entered against Violante, a judgment was entered against him in David's favor on the

trial court and on appeal, we need not consider whether the motion for reconsideration was timely.

On appeal, GECAL frames two issues in response to David's contention that "GECAL is responsible for towing and storage charges for its leased vehicle:"

POINT I DOES *N.J.S.A.* 2A:44–21 MAKE A MOTOR VEHICLE OWNER/LESSOR LIABLE FOR STORAGE CHARGES AND/OR CREATE A LIEN IN FAVOR OF THE GARAGE KEEPER IN THE ABSENCE OF THE STATUTORILY REQUIRED KNOWLEDGE AND CONSENT TO THE SERVICES RENDERED TO THE VEHICLE?

POINT II DOES THE MOTOR VEHICLE REPAIR FACILITY ACT, *N.J.S.A.* 39:10A–14 AND –20, MAKE A LESSOR OWNER LIABLE FOR STORAGE CHARGES OR IS THIS MERELY A MECHANISM TO PREVENT A SALE AND TO RECOVER A VEHICLE ABOUT TO BE SOLD AFTER NOTICE AND DUE PROCESS?

During oral argument before the trial court, David's stressed the lease terms that required the lessee to maintain and repair the vehicle at his expense, arguing that in order for the lessee to have the ability to see to repairs of the vehicle, the lessor must be deemed to have given the lessee authority to order the repairs. The argument continued:

"it is at least implicit in the agreement that the lessee has the authority to bind and, therefore, is acting with the consent of the lessor."

\* \* \*

[The lease] intends that if, because of the lessee's conduct in having those things done a lien applies and attaches, that the lessee will then indemnify the lessor from any obligations ... that the lessor is responsible for. That is an obligation between those parties, has nothing to do with the person for [whose] benefit ... a lien attaches[,] and a lien attaches ... when a service is performed.

The motion judge posed a question to counsel based upon a hypothetical situation in which a lessee abandons the vehicle:

Who's in a better position to ameliorate the accumulation of liens, the lessor or the garage man who has the car with the lease papers probably in the glove compartment, with the registration certificate that says, if I'm going to get a lien,

---

cross-claim for $6,550.83 in damages plus prejudgment interest of $536.78, plus post-judgment interest and costs of suit.

> I'd better notice this leaseholder [sic] that I'm charging him $35 a day to keep this car here.

In counsel's response, he pointed out that, in this matter, the vehicle was in storage for an extended period of time awaiting insurance company authorization for the repairs, which never occurred.

As the case is presented on appeal, we are confronted with practical issues of legal right arising from the interplay of a statute and three cases from the third decade of the last century. David's, contending that these authorities must be considered as they bear upon modern commercial practices reflected in the private-use auto lease before us, argues nevertheless that "this case appears to be a case of first impression."

*N.J.S.A.* 2A:44–21, the Garage Keeper's Lien Act, first enacted in 1915, currently reads:

> A garage keeper who shall store, maintain, keep or repair a motor vehicle ... at the request or with the consent of the owner or his representative, shall have a lien upon the motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle ... and may, without process of law, detain the same at any time it is lawfully in his possession until the sum is paid. A motor vehicle is considered detained when the owner or person entitled to possession of the motor vehicle is advised by the garage keeper, by a writing sent by certified mail return receipt requested to the address supplied by the owner or person entitled to possession of the motor vehicle, that goods or services have been supplied or performed, and that there is a sum due for those goods or services.
>
> The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded or a prior security interest perfected in accordance with chapter 9 of Title 12A of the New Jersey Statutes.

*N.J.S.A.* 39:10A–10 and –14, sections of the Motor Vehicle Repair Facility Act enacted in 1983, are cited as furnishing potential guidance. The latter section provides that the owner of a stored motor vehicle may reclaim possession at any time prior to its sale or other disposition by paying the reasonable costs of removal, storage, servicing or repair. The former section establishes, as a prerequisite to a garage keeper's invocation of the rights conferred by the statute, that the "owner of the motor vehicle or other person having legal right thereto" shall have been

given thirty days' notice "of the intent to remove and store the motor vehicle."

In *Stern v. Ward*, 94 *N.J.L.* 279, 109 *A.* 566 (E. & A.1920), the Court of Errors and Appeals affirmed a ruling of the former Supreme Court interpreting a provision of the "Garage Act," L.1915, c. 312, § 1, identical to the phrase before us in this matter, establishing a lien where the services in question were furnished "at the request or with the consent of the owner or his representative," *N.J.S.A.* 2A:44–21, "whether such owner be a conditional vendee or a mortgagee remaining in possession[.]" *Stern v. Ward, supra,* 94 *N.J.L.* at 280, 109 *A.* 566. The court held that the lessee of an automobile was not, by reason of that status alone, the representative of the owner for the purpose of incurring the charges at the root of the lien claim. *Ibid. Auto Security Co. v. Stewart,* 103 *N.J.L.* 1, 135 *A.* 92 (Sup.Ct.1926), announced a like holding. Both cases involved Pennsylvania auto leases with Pennsylvania lessors, but the lien claims adjudicated arose under the New Jersey statute. *Stern v. Payne,* 1 *N.J. Misc.* 151 (Sup.Ct. 1923), also involving a Pennsylvania lease, reached a contrary conclusion, recognizing the validity of the lien claim because the lessor's consent to the storage of the automobile had been established. *Cf. Diesel v. Associates Financial Servs. Co.,* 125 *N.J.Super.* 53, 54, 308 *A.*2d 373 (App.Div.1973).

In the face of these decisions, we cannot accept the characterization of this case offered by David's, that it is one of first impression. Were we writing on a clean slate, the arguments urged by David's might be seen as persuasive. One position is that the lessor in such a situation is in a better position to protect its interests than the garage keeper is to protect its interests. Another is that, to the extent the services provided preserved and protected the property, a benefit was ultimately conferred on the owner thereof, the lessor. But the power *vel non* of these arguments is beside the point. We are bound by the ruling of the Court of Errors and Appeals in *Stern v. Ward;* and the holdings in cases as venerable as *Auto Security* and *Stern v. Payne* should

not be lightly disregarded. Changes in common practice or relationships alone are no basis for disregarding a binding rule of law; and they do not justify a view that a settled issue has become one of first impression. *Cf. AKC, Inc. v. Opatut Family Trust,* 337 *N.J.Super.* 381, 388, 766 *A.*2d 1235 (Ch.Div.2000).

To be sure, personal and commercial dealings have undergone fundamental transformations in the intervening years. Private-use auto leasing, for example, has become a common practice. The Legislature might wish to review existing law in the light of current practices to determine whether the statutory scheme fully reflects general legislative design regarding the lien-claim rights of garage keepers in respect of leased vehicles and, in particular, the question of authority to incur storage and repair charges. Or, the current Supreme Court might well perceive a basis for departing from the principle of *Stern v. Ward.* However, as long as that case exists as the definitive statement under existing legislation of the authority of the lessee to incur charges for services or repairs to a motor vehicle enforceable against the lessor by way of the garage keeper's lien, we lack the authority to reach a contrary result. We do not pass upon the validity of the trial court judge's construal of *N.J.S.A.* 2A:44–21 not to apply to leased vehicles, or of the reasons expressed for reaching that conclusion. Our disposition of the matter is limited to the view that the holding of *Stern v. Ward* and its progeny require the result reached.

Affirmed.