848 A.2d 732

GENERAL ELECTRIC CAPITAL AUTO LEASE, PLAINTIFF–RE-
SPONDENT, v. ALFONSO VIOLANTE, DEFENDANT, AND
DAVID'S TOWING SERVICE AND DAVID BRIGATI, JR., T/A
DAVID'S TOWING SERVICE, DEFENDANTS–APPELLANTS.

Argued February 2, 2004—Decided May 25, 2004.

26

*William J. Pollinger,* argued the cause for appellants.

*William S. Wolfson,* argued the cause for respondent (*John R. Parker,* attorney).

*Donna L. Thompson,* submitted a brief on behalf of *amicus curiae* National Vehicle Leasing Association, New Jersey Chapter.

Justice ZAZZALI delivered the opinion of the Court.

In this case, a garage keeper who towed and stored a leased vehicle at the request of the lessee seeks to recover payment from the lessor for the value of those services by enforcing a lien against the vehicle pursuant to the Garage Keeper's Lien Act, *N.J.S.A.* 2A:44–20 to –31(Act). That statute entitles a garage keeper to secure payment for storage, maintenance, repairs, and

other services performed "at the request or with the consent of the owner or his representative" by imposing a lien on the motor vehicle serviced. *N.J.S.A.* 2A:44–21. The lessor challenged the garage keeper's right to a lien, arguing that the Act does not permit a lien for services furnished at the lessee's request because the lessee is neither the owner nor the owner's representative. The trial court dismissed the garage keeper's lien claim and the Appellate Division affirmed.

We must determine whether a lessee is a lessor's "representative" within the meaning of the Act when the lease agreement requires the lessee to service and repair the vehicle. We hold that by so obligating the lessee, the lessor confers upon the lessee the powers of a "representative" to provide the lessor's consent to services and repairs contemplated by the lease agreement. The garage keeper, therefore, can pursue its lien claim against the vehicle for those services that the lessee authorized as the owner's "representative."

We also address the garage keeper's claim that *N.J.S.A.* 39:10A–14 makes a lessor, as the vehicle's owner, liable for all charges related to storage and repairs. *N.J.S.A.* 39:10A–14 supplies owners with a mechanism for preventing a garage keeper from disposing of an abandoned motor vehicle. Because, in this appeal, the lessor's vehicle was not "abandoned" in the statutory sense, *N.J.S.A.* 39:10A–14 does not afford the garage keeper with a basis for recovery against the lessor.

## I.

This case comes to us on appeal from a motion for summary judgment granted in favor of the lessor. Accordingly, we must accept as true the evidence supporting the garage keeper and accord that party the benefit of all favorable inferences. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 536, 666 *A.2d* 146, 154 (1995). Viewed in that light, the pertinent facts are as follows.

In July 1997, Alfonso Violante (lessee) leased a 1994 Lexus GS300 from Bob Ciasulli Lexus, who then assigned "all right, title, and interest in and to the Vehicle and [the] Lease" to respondent General Electric Capital Auto Lease (GECAL or lessor). As a result of the assignment, the vehicle's Certificate of Title lists GECAL as the vehicle's owner.

The lease agreement contains the following provisions:

USE AND CARE OF THE VEHICLE

1. *USE AND RETURN OF THE VEHICLE*

This Lease gives you [1] the right to use the Vehicle, according to the terms of this Lease, until this Lease ends. . . .

2. *VEHICLE CARE AND CONDITION*

You will pay all expenses for the use and care of the Vehicle. This includes, but is not limited to, expenses for maintenance, insurance, repairs, gas, oil and tires. *You will have the Vehicle serviced regularly as recommended by the manufacturer and as required by any warranty or service contract. You will maintain the Vehicle in good working order and condition,* keep service and repair records, and allow us to inspect the Vehicle and records at any reasonable time. You will not make any change to the Vehicle, such as adding or removing parts, that would reduce the Vehicle's value or usefulness. All additions to the Vehicle that cannot be removed without reducing the Vehicle's value or usefulness will become our property.

3. *EXCESS WEAR*

You are responsible for all repairs to the Vehicle that are not the result of normal wear. These repairs include, but are not limited to, those necessary to: (i) replace any tire that has less than 1/8 inch of remaining tread or is not of at least the same size and type that was on the Vehicle on the Delivery Date; (ii) repair or replace any item that is damaged, broken, missing, not in good condition, not in good working order, or that would be covered by collision or comprehensive insurance whether or not such insurance is actually in force. . . .

4. *LIENS, CLAIMS AND TICKETS*

Unless we consent in writing, you will not transfer any interest in the Vehicle or this Lease. You will not create or let continue a lien on the Vehicle or this Lease. You will tell us as soon as possible if anyone claims a lien or other interest in the Vehicle or this Lease. You will indemnify us and hold us harmless for all liability (including strict liability), losses and expenses arising from the use, location or condition of the Vehicle, or from a lien or other interest you give or let continue without our written consent. This means that if, because of one of these matters, a

---

[1] In the lease agreement, "you" designates the lessee and "us" designates the lessor.

claim is made against us or the Vehicle or we incur losses or expenses, you will pay to defend us and you will pay the claim, losses and expenses. . . .

[(Emphasis added.)]

The agreement also gives the lessee the option to purchase the automobile at the end of the lease term for $14,677.50.

On March 12, 1999, during the term of the lease, the automobile was vandalized. The lessee, who by that time had defaulted on his lease payments, contacted petitioner David's Towing Service (David's) and requested towing and repair services for the damaged vehicle. That day, David's towed the vehicle to its garage. Although the vehicle remained in its possession from the towing date until August 1999, David's did not undertake any repairs. According to David's, it delayed servicing the automobile based on the lessee's indication that his insurance company first had to inspect the damage.

GECAL learned that the vehicle was being stored at the repair shop in late April 1999, almost six weeks after David's had towed the vehicle. On or about April 28, 1999, GECAL requested access to the vehicle for inspection and removal. David's denied that request because GECAL refused to pay the towing charges and storage fees that had accumulated since March 12, 1999.

In July 1999, GECAL commenced an action in Superior Court against the lessee for breach of the lease contract and repossession of the vehicle and against petitioners David Brigati, Jr. and David's Towing Service (collectively, David's) for replevin of the vehicle. After the complaint had been filed and served, David's agreed to release the car to GECAL in return for GECAL's promise to pay any judgment for towing and storage costs that David's might be awarded against it.

David's then filed a combined crossclaim and counterclaim against GECAL and the lessee. David's asserted that under New Jersey law, GECAL, as the vehicle's owner, and the lessee, as the individual that requested services, were jointly and severally liable for the towing and storage bill of $6,550.83, $6,010.20 of which was attributable to storage fees. David's also claimed that by requir-

ing the lessee to maintain the vehicle in good repair, GECAL expressly or impliedly authorized the towing and storage services. In its answer to the counterclaim, GECAL contended that the lessee was not its agent "for the purpose of obligating [GECAL] to third parties for repairs or storage charges." It also argued that David's failed to mitigate damages by taking reasonable steps to determine the vehicle's owner, such as checking the vehicle's registration.

In June 2000, the trial court entered a default order against the lessee and the matter proceeded with respect to David's claims against GECAL. The court directed the parties to address the legal question whether the Garage Keeper's Lien Act and *N.J.S.A.* 39:10A–14 applied to the circumstances presented here. After hearing oral argument on that question, the trial court entered an order granting summary judgment to GECAL.

In a written opinion attached to the order, the trial court observed that the Garage Keeper's Lien Act is silent regarding the lessor-lessee relationship. Therefore, the court concluded that the Act does not apply to leased vehicles. In arriving at that result, the court interpreted the Act as applying "only to those vehicles which have had historically recorded lien documents with them." The court also focused on the language in the lease agreement that forbade the lessee from incurring liens on the vehicle. Relying on that language, the court concluded that because the parties had expressly contemplated, and rejected, the possibility of a lien, Violante as lessee had no power to encumber GECAL's title. Although David's also sought relief under *N.J.S.A.* 39:10A–14, the court did not discuss that statute's applicability.

David's appealed and the Appellate Division affirmed, but on different grounds. *Gen. Elec. Capital Auto Lease v. Violante,* 358 *N.J.Super.* 171, 817 *A.*2d 376 (2003). It held that David's did not have a valid lien against the vehicle because the lessee lacked the authority to incur storage and repair charges on GECAL's behalf. *Id.* at 174–75, 817 *A.*2d at 378–79. The panel determined that it

was bound by two decisions from the early twentieth century, *Stern v. Ward,* 94 *N.J.L.* 279, 109 *A.* 566 (E. & A.1920), and *Auto Security Co. v. Stewart,* 103 *N.J.L.* 1, 135 *A.* 92 (Sup.Ct.1926), which it interpreted as holding that "the lessee of an automobile was not, by reason of that status alone, the representative of the owner for the purpose of incurring the charges at the root of the lien claim." *Gen. Elec. Capital Auto Lease, supra,* 358 *N.J.Super.* at 177, 817 *A.*2d at 380. Believing itself constrained by that authority, the panel concluded that a lien based on services for a motor vehicle authorized only by a lessee is not enforceable against a lessor. *Id.* at 177–78, 817 *A.*2d at 380–81. In basing its decision on *Ward* and *Auto Security Co.,* the court did not review the trial court's determination that the Act, because of its silence concerning leases, has no application whatsoever to leased vehicles. *Id.* at 178, 817 *A.*2d at 381. Nor did the court directly address the applicability of *N.J.S.A.* 39:10A–14. *See id.* at 176–77, 817 *A.*2d at 379–80 (noting only that *N.J.S.A.* 39:10A–14 was "cited as furnishing potential guidance").

Notwithstanding its holding, the Appellate Division recognized that David's arguments had some appeal, noting that if it was "writing on a clean slate, the arguments urged by David's might be seen as persuasive." *Id.* at 177, 817 *A.*2d at 380. The court suggested that the Legislature "might wish" to revisit the Garage Keeper's Lien Act and observed that this Court "might well perceive a basis for departing from the principle of *Stern v. Ward.*" *Id.* at 178, 817 *A.*2d at 381.

We granted David's petition for certification, 177 *N.J.* 490, 828 *A.*2d 918 (2003), and now reverse.

## II.

The Garage Keeper's Lien Act provides garage keepers with a statutory means for "secur[ing] the payment of a debt incurred, by the owner or his representative, for the benefit of [the vehicle] and the use to which it is put." *Crucible Steel Co. of*

*Am. v. Polack Tyre & Rubber Co.*, 92 *N.J.L.* 221, 227, 104 *A.* 324, 326 (E. & A.1918). It states, in pertinent part:

> A garage keeper who shall store, maintain, keep or repair a motor vehicle or furnish gasoline, accessories or other supplies therefor, *at the request or with the consent of the owner or his representative,* shall have a lien upon the motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle or for furnishing gasoline or other fuel, accessories or other supplies therefor, and may, without process of law, detain the same at any time it is lawfully in his possession until the sum is paid. . . .
>
> The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded or a prior security interest perfected in accordance with chapter 9 of Title 12A of the New Jersey Statutes.
>
> [*N.J.S.A.* 2A:44–21 (emphasis added).]

As the statute makes clear, a garage keeper's right to encumber a vehicle with a lien is limited to those services performed "at the request or with the consent of the owner or [the owner's] representative." *Ibid.* Although the Act's main purpose is the protection of garage keepers, the consent requirement provides an important safeguard to owners by precluding liability for unauthorized services. *See Crucible Steel Co. of Am., supra,* 92 *N.J.L.* at 229, 104 *A.* at 326 (explaining Act does not encumber property of owner, "except by his own act"). The pivotal question thus becomes whether an owner's consent is present when, pursuant to a provision in a lease agreement that requires the lessee to repair and maintain the vehicle, the lessee requests a garage keeper's services.

As noted, the Appellate Division primarily relied on *Ward* and *Auto Security Co.* in finding no enforceable lien to exist under the Act. *Gen. Elec. Capital Auto Lease, supra,* 358 *N.J.Super.* at 177–78, 817 *A.*2d at 380–81. A close reading of those cases, however, reveals that they are distinguishable from the facts presented by this appeal. *Ward* involved a lease agreement, governed by Pennsylvania law, that expressly forbade the lessee from having the vehicle repaired without first obtaining the lessor's consent. 94 *N.J.L.* at 280, 109 *A.* at 566. Moreover, at that time, Pennsylvania law did not consider a lessee to be an owner's "representative" under such an agreement. *Ibid.* Based on the terms of the

agreement and the applicable law, the Court of Errors and Appeals concluded that the lessee was not the lessor's "representative" and, thus, did not have the power to incur a garage keeper's lien on the lessor's vehicle. *Ibid.* In *Auto Security Co.,* the court found *Ward* controlling because the lease agreement contained similar contractual terms and also was subject to Pennsylvania law. 103 *N.J.L.* at 3, 135 *A.* at 93. Accordingly, the court dismissed the garage keeper's lien claim because the garage keeper furnished the services only at the lessee's behest, without the requisite consent of the owner or the owner's representative. *Ibid.* In dismissing the garage keepers' claims, however, neither *Ward* nor *Auto Security Co.* held categorically that a lessee could never be considered a "representative" of the owner as that term appears in the Act. Both courts determined only that when a lease agreement forbids a lessee from repairing the vehicle without the owner's permission, the lessee's consent to services does not permit the garage keeper to hold the lessor responsible for the lessee's bill. *Ward, supra,* 94 *N.J.L.* at 280, 109 *A.* at 566; *Auto Security Co., supra,* 103 *N.J.L.* at 3, 135 *A.* at 93.

This case presents a very different lease agreement, one that expressly requires the lessee to repair and maintain the vehicle. That fact alone distinguishes *Ward* and *Auto Security Co.* More to the point, however, is *Stern v. Payne,* 1 *N.J. Misc.* 151, 151 (Sup.Ct.1923), a case dealing with a lease agreement that expressly required the vehicle to be stored with a specific garage keeper. After the lessees failed to pay their storage bill, the garage keeper named in the lease agreement invoked the Act's lien procedures. *Ibid.* The court dismissed the lessor's argument that *Ward* precluded the garage keeper's lien because the lessees had commissioned the storage. *Id.* at 151–52. Citing the terms of the lease contract, the court instead found that "the car was stored with [the garage keeper], not merely with the consent of [the lessor], but by [its] request and, indeed, at [its] express direction[.]" *Id.* at 152. In relying on the lease agreement for satisfaction of the Act's consent requirement, the court did not explain whether it viewed the lessees as the owner's "representatives" or whether it

considered the owner to have given its consent, albeit impliedly, to the garage keeper. Thus, the court left for us the task of construing the terms "consent" and "representative" as used in the Act.

Because the Legislature provided no definition of either "consent" or "representative," we look to their "'ordinary and well understood meaning[s].'" *Fahey v. City of Jersey City*, 52 *N.J.* 103, 107, 244 *A.2d* 97, 99 (1968) (quoting *Safeway Trails, Inc. v. Furman*, 41 *N.J.* 467, 478, 197 *A.2d* 366, 371, *cert. denied*, 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.2d* 84 (1964)). "Consent" means "to express a willingness [or] give assent or approval." *Webster's Third New International Dictionary* 482 (1971). And "representative" is commonly understood as "[o]ne that represents another or others in a special capacity: as ... agent, deputy, substitute, or delegate usu[ally] being invested with the authority of the principal." *Id.* at 1926–27. For purposes of the Act, there is no reason to depart from those common definitions; however, they must be understood in light of the policy goals underpinning the statute.

The primary purpose of the statute is to ensure that garage keepers receive payment for storage, maintenance, supplies, repairs, and other services furnished to a motor vehicle. *Crucible Steel Co. of Am., supra*, 92 *N.J.L.* at 228, 104 *A.* at 326. Despite its focus on the garage keeper, the Act affords owners with protection from unauthorized liens through the consent requirement. But by contractually compelling a lessee to maintain the vehicle in good repair, an owner gives its assent to and approval for those services that are necessary for preservation of the vehicle's value. In such circumstances, the owner must be considered to have "consented" to repairs ordered by the lessee, who similarly must be viewed as the owner's "representative" under the statutory scheme. Although the terms of a lease may allocate financial responsibility for repairs to the lessee, that language is not determinative of the relative rights of the lessor and a third-party garage keeper for expenses related to servicing the vehicle. Because the lessor receives an undeniable benefit

from the garage keeper's labor and services, denying the validity of a lien would unfairly prejudice the garage keeper and thereby undermine the statute's central purpose.

Finally, we reject the trial court's interpretation of the Act as applying "only to those vehicles which have historically recorded lien documents." For that proposition, the trial court relied on the following language in the Act:

> The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded or a prior security interest perfected in accordance with chapter 9 of Title 12A of the New Jersey Statutes.
>
> [*N.J.S.A.* 2A:44-21.]

Because the Act mentions prior conditional sales and prior chattel mortgages but not lease agreements, the trial court reasoned that the Act does not apply to leased vehicles. That reasoning reflects a misunderstanding of the statute.

■ The statutory text subordinates the garage keeper's lien to the three interests named in the statute: (1) the interests of the conditional vendor; (2) the interests of the chattel mortgagee; and (3) the properly perfected security interest. That language by no means excludes vehicles not subject to those three interests from the scope of the Act's coverage. Instead, a better reading of the statute would be that the interests not referenced, including a lessor's interest, are meant to be subordinate to the garage keeper's lien. Viewed in that light, the statute's silence with respect to leases poses no bar to garage keepers invoking the Act's procedures to collect payment for services furnished to leased vehicles. *See Payne, supra,* 1 *N.J. Misc.* at 152 (finding that Act entitled garage keeper to lien on leased vehicle for storage requested by lessee).

## B.

■ Applying the above principles to the facts in this case, we hold that the lessee had the authority to act as GECAL's "repre-

sentative," as that term is used in the Act, when he requested David's services.

In the lease agreement, GECAL imposed a number of contractual duties on the lessee to repair and service the vehicle. One provision of the agreement required the lessee to "have the Vehicle serviced regularly as recommended by the manufacturer and as required by any warranty or service contract." Another provision obligated the lessee to keep the car in "good working order and condition." The lessee's failure to comply with either of those obligations entitled GECAL to repossess the vehicle and terminate the lease agreement. By conditioning the lessee's continued possession of the car on satisfaction of the repair and maintenance obligations contained in the lease agreement, GE-CAL empowered the lessee to act as the company's "representative" for the purpose of having a garage keeper make repairs or furnish other necessary services. David's is therefore entitled to subject GECAL's vehicle to a lien for the labor and services contemplated by the lease agreement.

We find unavailing GECAL's argument that because the lease agreement expressly precluded the lessee from incurring liens on the vehicle, the lessee lacked the authority of a "representative." That contention overlooks the fact that the right to encumber the vehicle with a lien belongs to the garage keeper and not the owner. As such, it is not within the owner's power to restrict the garage keeper's statutory right through a contract with a lessee. *Cf.* 53 *Am. Jur. 2d Mechanics' Liens* § 143 (1996) (explaining that "a lease provision declaring that the lessee is without power to subject the lessor's interest to any mechanic's lien claim is without effect"). Accordingly, the provision in GECAL's lease agreement barring the lessee from allowing the vehicle to be encumbered with a lien does not alter our conclusion that the lessee was GECAL's "representative."

### III.

The above discussion does not resolve a second issue advanced by GECAL at oral argument. Specifically, GECAL urged us to

consider whether a garage keeper must notify the lessor of the vehicle's location and the amount of the charges being incurred against the vehicle in order to include storage fees in the lien claim. That question should be resolved by the Legislature. However, until the Legislature revisits the Act, principles of fairness necessitate that we provide some guidance on this issue.

Included among the services that can furnish the basis for a garage keeper's lien are "storing" or "keeping" a motor vehicle. *N.J.S.A.* 2A:44–21. The Act does not specifically require any notice to the lessor concerning the provision of those services. The absence of a notice requirement makes sense in the context of the statute because a lien only arises after the owner or the owner's representative has requested or consented to the vehicle's storage.

■ When the lessee leaves the vehicle at the repair shop for weeks of storage, however, the lack of notice to the lessor becomes problematic. Because the lessee's power as the lessor's "representative" derives from the mandates of the lease agreement, storage services that are not contemplated by that contract necessarily fall outside the scope of the lessee's representation. We recognize that a period of storage might be necessary for the performance of certain repairs. The lessee's power to authorize repairs would extend to that storage period. But when storage of the vehicle is no longer necessary as an incident of the lessee's obligations under the lease agreement, it would be unfair to hold that the property of the lessor, who has no knowledge of the vehicle's location and no opportunity to keep costs from escalating, may be encumbered for services not contemplated in the underlying lease agreement. Requiring the garage keeper to provide notice to the lessor avoids that potential injustice by ensuring that only storage expenses directly related to the performance of repairs may serve as a basis for a lien under the Act. Although the time period should be established by statute, until such time as the Legislature acts, trial courts must make that determination on the facts of each case.

■ In aid of that effort, we offer interim guidance. When evaluating the garage keeper's efforts to notify the lessor, trial courts should employ a test of reasonableness. Ordinarily, notice to the lessor within seven days of the vehicle's arrival at the repair shop will be reasonable. In the majority of foreseeable cases, seven days will allow the garage keeper to ascertain any problems that might warrant a departure from the normal course of affairs in which the lessee alone need be involved in arranging for repairs of the vehicle. By that time, the lessee's unwillingness or inability to pay should become apparent, alerting the garage keeper of the need to contact the title owner. In view of the requirement under N.J.S.A. 39:3–4 that the lessor's name and address be included on the vehicle's registration, contacting the owner within seven days is feasible. Seven days thus serves as a baseline against which trial courts can measure the reasonableness of the garage keeper's conduct.

■ Under our seven-day-notice approach, a garage keeper who provides notice within seven days will be entitled to a lien for both the cost of storage for those initial seven days and the cost of any storage that occurs after the lessor receives notice and an opportunity to reclaim the vehicle. In contrast, a garage keeper who notifies the lessor after seven days have passed will not be permitted to hold the lessor responsible for the storage charges incurred from the end of the initial seven-day period until the time of notification.

We recognize that our solution may not be perfect. Until the Legislature fashions another remedy, however, in most instances our approach will adequately safeguard the interests of both the garage keeper and lessor, and thus give effect to the legislative intent undergirding the Act. We emphasize that it is for the trial court to determine how much time is reasonable in the circumstances of each case, applying the guideline announced above.

■ In this appeal, nothing in the lease agreement authorized the lessee to consent to storage other than storage that was incidental to repairs and maintenance required by the agreement.

Accordingly, the lessee was not acting as GECAL's "representative" when he allowed the vehicle to be stored for the extended period on which David's bases a substantial portion of its claim. For that reason, that additional storage time cannot serve as a basis for David's lien claim. David's can only recover for storage charges incidental to the requested repairs. Whether, on these facts, that amounts to seven days is for the trial court to determine.

## IV.

As noted, David's also contends in its briefs that *N.J.S.A.* 39:10A–14 provides another avenue for redress against GECAL for the towing and storage charges incurred by the lessee. Neither the trial court nor the Appellate Division addressed that claim. Having considered it, we agree with GECAL that under that statute, David's does not have a valid claim.

*N.J.S.A.* 39:10–14 is one part of a larger statutory scheme that has as its primary purpose the facilitation of a garage keeper's disposal of abandoned motor vehicles. *See L.* 1983, *c.* 455 (describing statute, *N.J.S.A.* 39:10–8 to –20, as "[a]n Act providing for the removal, storage, sale and junking of *abandoned* motor vehicles left at motor vehicle repair facilities") (emphasis added). For purposes of the statute, a vehicle is "abandoned"

if it is left at a motor vehicle repair facility without an attempt by the owner, a person on the owner's behalf or any other person having a legal right thereto to regain possession thereof:

a. For a period in excess of 60 days without the consent of an authorized representative of the motor vehicle repair facility;

b. For a period of 60 days in excess of the period for which consent has been given by an authorized representative of the motor vehicle repair facility; or

c. For a period in excess of 60 days after being notified by an authorized representative of the motor vehicle repair facility that service or repairs to the motor vehicle have been completed.

[*N.J.S.A.* 39:10A–8.]

Once a vehicle meets that definition of "abandoned," a garage keeper may remove, sell, or obtain a "junk title certificate" for the vehicle, *N.J.S.A.* 39:10A–9, after providing thirty-days notice to

the vehicle's owner "or other person having a legal right thereto." *N.J.S.A.* 39:10A–10 (requiring notice to owner before removal and storage); *N.J.S.A.* 39:10A–11 (requiring notice to owner before sale); *N.J.S.A.* 39:10A–12 (requiring notice to owner before issuance of junk title certificate).

Through *N.J.S.A.* 39:10A–14, the statute gives an owner a mechanism to prevent the sale or junking of the vehicle:

> At any time prior to the sale of the motor vehicle or the issuance of a junk title certificate therefor, the owner of the motor vehicle may reclaim possession of the motor vehicle from the motor vehicle repair facility or other person with whom the vehicle is stored pursuant to this act, upon payment of the reasonable costs of removal and storage of the motor vehicle, the expenses incurred pursuant to the provisions of this act, and the charges for the servicing or repair of the motor vehicle.

Focusing on the language entitling the owner to reclaim the vehicle "upon payment of the reasonable costs of removal and storage," David's argues that *N.J.S.A.* 39:10A–14 requires a lessor reclaiming possession of a vehicle to pay for costs of services furnished regardless of who requested the services. David's interpretation, however, overlooks the specific language employed in *N.J.S.A.* 39:10A–14 and the statutory context in which that provision appears.

The plain language of *N.J.S.A.* 39:10A–14 indicates that the provision applies to only abandoned vehicles. In pertinent part, *N.J.S.A.* 39:10A–14 states that "[a]t any time prior to the sale of *the* motor vehicle . . ., the owner of *the* motor vehicle may reclaim possession[.]" (Emphasis added.) The Legislature's use of the definite article indicates that "motor vehicle" has a particular meaning previously given to it in the statute. *See Garden State Fire & Cas. Co. v. Commercial Union Ins. Co.*, 176 *N.J.Super.* 301, 306–07, 422 *A.*2d 1327, 1330–31 (App.Div.1980) (noting that statute's use of "the" before "insurer" suggests "a particular type of insurer within the contemplation of the act"). Reference back to the preceding provisions, which define an "abandoned motor vehicle" and authorize the removal, sale, or issuance of a junk title certificate, makes clear that "the motor vehicle" described in

*N.J.S.A.* 39:10A–14 is the abandoned motor vehicle previously mentioned.

██ The particular placement of *N.J.S.A.* 39:10A–14 in the statute reinforces our interpretation of the provision as applying only to abandoned vehicles. *See Lesniak v. Budzash,* 133 *N.J.* 1, 14, 626 *A.*2d 1073, 1080 (1993) (explaining that courts should construe statutes in way that "advance[s] the sense and meaning fairly deducible from the context"). *N.J.S.A.* 39:10A–14 comes after *N.J.S.A.* 39:10A–13, a provision that specifies the contents and the method of delivery of the garage keeper's notice to the owner regarding the garage keeper's intent to sell or junk the abandoned vehicle. And *N.J.S.A.* 39:10A–14 precedes *N.J.S.A.* 39:10A–15, a provision that requires an application for a certificate of ownership to be filed when the abandoned vehicle is sold. The position of *N.J.S.A.* 39:10A–14 in the statutory scheme thus demonstrates that it concerns abandoned property. The right to reclaim a vehicle upon payment for services and repairs under *N.J.S.A.* 39:10A–14 does not come into effect until the vehicle has been "abandoned" and the garage keeper has notified the title owner of its intent to sell or junk the vehicle. Therefore, *N.J.S.A.* 39:10A–14 does not provide a garage keeper with a broad right of recovery against a lessor for costs associated with storage and repairs requested by a lessee.

██ In this case, the vehicle was never "abandoned" because GECAL contacted David's about repossessing it within sixty days after David's towed it. Although the vehicle remained in David's possession for over three months, GECAL made attempts during that period to take back the car, including filing a replevin action against David's. It was David's refusal to release the car during that period that prevented GECAL from regaining possession. On those facts, *N.J.S.A.* 39:10A–14 does not apply. Therefore, to the extent that the trial court's grant of summary judgment to GECAL encompassed David's claim under *N.J.S.A.* 39:10A–14, we affirm that portion of the judgment.

## V.

We hold that the Garage Keeper's Lien Act entitles David's to pursue its lien claim against GECAL's vehicle for those services that the lessee was obligated to undertake pursuant to the lease agreement. In view of that holding, we reverse the decision of the Appellate Division dismissing David's lien claim and remand the case to the trial court for a determination of the amount of the lien, which includes a reasonable amount for the tow and storage. We also hold that, on the facts presented here, *N.J.S.A.* 39:10A–14 does not provide David's with a remedy against GECAL. The order granting summary judgment to GECAL on that claim is affirmed.

Reversed and remanded in part, and affirmed in part.

Justice VERNIERO, concurring in part, dissenting in part.

I concur in the Court's opinion to the extent that it concludes that a lessee of an automobile is a leasing company's "representative" for purposes of the Garage Keeper's Lien Act, *N.J.S.A.* 2A:44–20 to –31. In that respect, the Court performs its traditional function in interpreting a statutory term made ambiguous by the modern realities of the marketplace. In so doing, the Court effectuates what it correctly perceives is the Legislature's intent, keeping faith with the statute's overall purpose.

Unlike my colleagues, I would end the analysis there. Instead, the majority goes on to conclude that garage keepers, to preserve their statutory lien for storage costs beyond one week's time, ordinarily must give notice to leasing companies within seven days of receiving leased vehicles on their lots. The flaw in that approach is that the Legislature enacted no timeframe, imposed no notice requirement at all in this setting.

Indeed, the Court is clear in its desire to have the Legislature ultimately resolve the notice question. That said, the majority imposes a notice requirement on garage keepers even though the Act contains no such requirement. Although the majority indi-

cates that trial courts should make a case-by-case determination of the appropriate notice period, the Court effectively declares that seven days will be the correct timeframe for the majority of cases. Moreover, because it can be altered only by the Legislature or by subsequent case law, the Court's "interim guidance" takes on an air of permanency.

There is a difference between our construing an ambiguous statutory provision and creating an entirely new provision when none exists. Courts often are called on to do the former; we should avoid the latter in all but the most exceptional situations, such as when curing a constitutional infirmity. *See Shapiro v. United States,* 335 *U.S.* 1, 43, 68 *S.Ct.* 1375, 1397, 92 *L.Ed.* 1787, 1812 (1948) (Frankfurter, J., dissenting) (observing that, when interpreting statute, "there is a difference between reading what is and rewriting it"); *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 75, 411 *A.*2d 168, 177 (1980) (explaining that "[i]n appropriate cases, a court has the power to engage in 'judicial surgery' . . . to free [statute] from constitutional doubt or defect").

I well understand the Court's desire to be "fair" to leasing companies as it attempts to balance the equities between those companies and garage keepers. However, without the benefit of legislative hearings or testimony from interested parties, I cannot share in the Court's confidence that it has reached a workable solution to a perceived problem. Similarly, I am unable to conclude that seven days (as opposed to some other number) is the correct "baseline" period. Consistent with our tripartite system, I simply would identify the problem and leave it to the legislative and executive branches to decide whether they think that the Act needs to be fixed and, if so, how.

Lastly, without the Court's remedy, leasing companies still could protect themselves by including language in their leasing agreements requiring lessees to give notice when leased vehicles have been deposited on garage keepers' lots. I consider that approach to be more in keeping with the restraint required by our

canons of statutory construction than the solution imposed by my colleagues. In sum, I would address only the meaning of "representative" under the Act and would leave it to the other two branches to refine the statute in response to the notice issue if they decide that further refinement is necessary. To the extent that the majority does otherwise, I respectfully dissent.

*For reversal and remandment in part/affirmance in part—*
Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed—*None.