**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4531-14T4

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Plaintiff-Respondent,

v.

AUTOTECH COLLISION
SERVICE,

    Defendant-Appellant/
    Third-Party Plaintiff,

v.

MICHAEL CRINCOLI,

    Third-Party Defendant.

_____

Argued November 10, 2016 — Decided May 9, 2017

Before Judges Lihotz, Hoffman and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Gloucester County, Docket No.
L-0850-14.

John W. Trimble, Jr., argued the cause for
appellant (Trimble & Armano, attorneys; Mr.
Trimble and Katrina M. Geary, on the brief).

Robert M. Kaplan argued the cause for respondent (Margolis Edelstein, attorneys; Mr. Kaplan, on the brief).

PER CURIAM

Defendant-third party plaintiff Autotech Collision Service (defendant) appeals from an April 30, 2015 order determining it was entitled to only $1276.79 of the $26,567.60 it sought for services it allegedly provided to third-party defendant, Michael Crincoli. Defendant also appeals from the provision in the order that denied it counsel fees. We affirm.

I

On May 5, 2014, Crincoli struck a deer and damaged his 2008 Jeep Liberty (Jeep). He reported the accident to his automobile insurance company, New Jersey Manufacturers Insurance Company (NJM), the same day. The following day, Crincoli took the Jeep to defendant, an auto body repair facility, and signed a form entitled "Authorization to Repair."

In pertinent part, this form stated: (1) defendant had the authority to dismantle the vehicle "as needed to prepare a comprehensive written estimate/blueprint for repair and to proceed with repairs"; (2) the cost of the estimate was fifty dollars, plus three percent of the estimated amount; (3) the failure to take possession of the vehicle more than three days after being notified the repairs were completed or terminated

2

might result in storage fees; and (4) storage fees may be charged if repairs are halted or terminated before the vehicle was repaired.

Although this form stated Crincoli waived his right to a "detailed" written estimate, the form did not state he waived any other rights. Significantly, this form did not, as required by N.J.A.C. 13:21-21.14, provide any notice of what defendant charged for storage.

On May 7, 2014, an appraiser from NJM inspected the Jeep and advised defendant he would prepare an estimate. At that time, only the front bumper grill and left headlight had been removed. Thereafter, defendant disassembled the vehicle and, on May 8, 2014, generated a "preliminary estimate" stating the cost to repair the Jeep would be $11,726.55. Defendant claimed it needed to disassemble the vehicle to fully access and evaluate the damages and to render an accurate estimate. Defendant submitted its estimate to NJM on May 8, 2014.

In the meantime, NJM's appraiser prepared his own estimate, concluding the cost to repair the Jeep would be $10,493.33. Because the fair market value of the vehicle was only $11,900, the appraiser determined the damage to the vehicle caused a "total loss." NJM advised defendant it would not pay for repairing the vehicle. Importantly, the appraiser testified

3

there was no need to disassemble the vehicle to provide an estimate and, if it had not been disassembled, the vehicle could have been stored outside. The trial court found the appraiser's testimony credible.

On May 9, 2014, NJM informed Crincoli the car could not be repaired, and the two eventually agreed upon the amount NJM would pay Crincoli for the salvage value of his Jeep. On May 14, 2014, Crincoli went to defendant's premises to remove his personal belongings from the vehicle and sign forms to enable NJM to take title to the car. While there, Crincoli signed an "Authorization for Release of Vehicle" form, a "Selection of Storage Option" letter from defendant to Crincoli, and a "Client's Termination of Repair" form. The "Authorization of Release" form stated Crincoli was the legal owner of the Jeep, but granted permission to defendant to release the vehicle to his insurance company.

Although the only service defendant performed for Crincoli was to provide an estimate and there is no evidence defendant commenced any repair work on the Jeep, defendant gave Crincoli a letter, entitled "Selection of Storage Option." This letter suggested defendant had done some repair work on the Jeep and addressed storage fees. The letter stated in relevant part:

4

[T]he repairs on the . . . vehicle have been halted due to circumstances beyond our control. As a result, your vehicle has been removed from normal production until all outstanding issues have been resolved so that we may provide services to our other customers.

Currently, we are awaiting further authorization from the insurer and/or direction from the customer for the resolution of remaining/outstanding issues regarding the pending repair. . . .

The vehicle . . . has been stored on our premises . . . since 5/6/14, and will continue to be until such time as all outstanding charges are paid in full and the vehicle is either removed from our facility or arrangements are made that will enable pending repairs to continue.

During the storage of this vehicle, our facility will be charging storage fees on a daily basis. In the event of termination of repairs, storage charges will accrue from the date the vehicle arrived on our premises through the date it leaves our premises. . . .

Please accept this letter as a Notice of Claim Lien pursuant to New Jersey Statute N.J.S.A. 2A:44-21. . . .

At this time, we are requesting direction on the manner in which the vehicle will be stored until repairs are either re-instituted or whereas the repairs are terminated, all charges are paid in full, the authorization to release the vehicle is signed by the customer of record and the vehicle is removed from our facility.

5

The letter further stated it was providing the customer the option of choosing between storing the vehicle inside for $100 per day or outside for $50 per day. The form provided that if the customer did not make a selection in writing, defendant would place the vehicle outside. Crincoli signed the letter; above his signature are pre-printed words, which state: "I have read and fully understand the proceeding and I hereby choose [the option for inside storage]. Crincoli chose this storage option because defendant removed the windows and one door on the Jeep to complete its estimate, and Crincoli was concerned the vehicle would sustain further damage if left outside. Crincoli assumed NJM was going to remove the Jeep within a matter of days.

The "Client's Termination of Repair" form stated the "repair contract" previously signed and executed on May 6, 2014, was terminated. It is not disputed the "repair contract" is the "Authorization to Repair." The "Client's Termination of Repair" form further stated:

> I understand fully that [defendant] had been previously authorized to proceed with repairs and have conducted limited activities in strict compliance with that request and authorization.
>
> Furthermore, I understand that the charges owed for these completed activities are now fully due and payable. . . .

6

> I hereby accept this as a notice of existing mechanics/garage keeper's lien . . . .
>
> I hereby terminate the contract of repair and ask that final billing be prepared at you're [sic] earliest for review and payment. . . .
>
> <u>Note to Customer</u>: Our facility is not designed nor operated as a storage facility, and we request that arrangements be made for the vehicle to be removed as quickly as possible to avoid additional charges. We request that the insurer and the consumer come forward immediately and pay these charges to mitigate any future losses for storage and interest. . . .
>
> Note: Vehicle will not be released until all billings are paid in full.

Defendant issued an invoice for $3099.57 for the conducting the estimate. On May 16, 2014, NJM forwarded a letter to defendant protesting the charge as unreasonable. NJM sought to retrieve the Jeep from defendant, but defendant refused to relinquish it until its bill was paid. On May 22, 2014, NJM offered to settle the bill for $1040, but defendant rejected the offer. In June 2014, NJM filed a complaint against defendant for wrongful detention of the Jeep.

In August 2014, defendant filed a third party complaint against Crincoli, alleging, among other things, he breached the Authorization to Repair by failing to pay the fee charged to do the estimate and to pay for storage of the Jeep at the rate of

7

$100 per day, commencing May 6, 2014. Defendant also asserted it was entitled to a lien against the Jeep under the Garage Keeper's Lien Act (Act), N.J.S.A. 2A:44-20 to -31, and thus was lawfully detaining the Jeep.

Plaintiff forwarded a check for $1950 to defendant's attorney for deposit into his trust account, and the Jeep was released to NJM. After a summary hearing, the court denied as moot plaintiff's complaint. The court also denied all but $1276.79 of the $26,567.60 defendant sought in its third party complaint. By the time of the hearing, storage fees had climbed to $22,550. Further, the court denied defendant counsel fees.

The specific fees to which the trial court found defendant entitled were (1) $401.79 to prepare the estimate, (2) $75 to dispose of hazardous waste, and (3) $800 in storage fees, representing the cost to store the Jeep from May 6, 2014 to May 22, 2014, at the rate of $50 per day. Added together, these fees are $1276.79.

After applying the formula provided in the Authorization of Repair, the trial court calculated defendant was entitled to only $401.79 for preparing the estimate. Although defendant charged more than the latter sum, the court found that, in accordance with N.J.A.C. 13:21-21.10(h), defendant's fee was limited to what defendant represented it would charge in the

8

Authorization to Repair.[1] Because the Authorization to Repair stated the cost of the estimate would be "$50.00 plus 3% of the total estimated amount," the court held defendant could not recover more than $401.79 for preparing the estimate.[2]

The trial court permitted the hazardous waste fee, finding it was authorized pursuant to N.J.A.C. 13:21-21.10(i). However, the court disallowed other incidental fees, because the amount or the method to ascertain such fees was not properly disclosed in the Authorization to Repair in accordance with N.J.A.C. 13:21-21.10(h), or authorized by other regulations.[3]

The trial court held defendant was entitled to only $800 of the $22,550 it sought for storage fees, because defendant was not required to retain the Jeep after May 22, 2014, in order to protect its claims. The court also determined defendant had a duty to mitigate its damages and, thus, was obligated to turn over the Jeep to NJM when NJM first sought possession of the

---

[1] N.J.A.C. 13:21-21.10(h) provides "[a]n auto body repair facility may charge a reasonable fee for making a written estimate. If a fee is charged for making a written estimate, then the auto body repair facility must disclose, in writing, the amount of the fee to the customer before the written estimate is prepared."

[2] Three percent of $11,726.55, defendant's estimate to repair the Jeep, plus $50 is $401.79.

[3] These other incidental fees were for code scanning, legal review, administrative work, and yard work.

A-4531-14T4

vehicle.  Finally, the court found no basis to award defendant counsel fees.

II

Defendant's principal contentions on appeal are:

(1) the court improperly relied upon N.J.A.C 13:21-21.10(h) to disallow all but $401.79 for its fee to prepare the estimate, as N.J.A.C 13:21-21.11 and N.J.A.C. 13:45A-26C.2(a)(3)(i)(4) authorize defendant to charge a greater fee to prepare the estimate;

(2) Crincoli waived his right to a detailed written estimate;

(3) the Authorization to Repair permitted defendant to dismantle the car to prepare an estimate;

(4) N.J.A.C 13:21-21.11 permitted defendant to charge administrative and yard fees;

(5) defendant was entitled to storage charges pursuant to the contracts between defendant and Crincoli, as well as pursuant to N.J.A.C. 13:21-21.14 and the Act;

(6)  the trial court improperly denied counsel fees. We reject these contentions.

"[F]actual findings of a trial court are reviewed with substantial deference on appeal" and are not to be overturned as long as "they are supported by 'adequate, substantial and

10

credible evidence.'" Manahawkin Convalescent v. O'Neill, 217

N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of

Warren, 169 N.J. 282, 293 (2001)). However, "[a] trial court's

interpretation of the law" and any "legal consequences []

flow[ing] from established facts" are not afforded "any special

deference[,]" and are reviewed de novo. Manalapan Realty, L.P.

v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Of the six points enumerated above, all but the fifth are

without sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E).

We turn to defendant's claim for storage fees subsequent to

May 22, 2014. First, defendant argues N.J.A.C. 13:21-21.14

enabled it to charge storage fees. However, this regulation

sets forth the very reason why defendant is not entitled to such

fees. N.J.A.C. 13:21-21.14 provides:

> Every auto body repair facility that charges
> a fee to store a motor vehicle on its
> premises shall disclose in writing, as soon
> as practicable, the amount of such storage
> charge to the customer on a per diem basis.
> Written notice of such storage charges shall
> be included in the repair authorization.
>
> [Ibid. (emphasis added).]

While the regulation states storage fees are permitted, the

right to charge such fees is conditioned upon the fees appearing

in the repair authorization. As even defendant's attorney

11

conceded during oral argument, the storage fees defendant charged were not included in the Authorization to Repair.

Defendant contends the "contracts" between it and Crincoli authorized it to charge storage fees. As for the Authorization to Repair, this document states storage fees may be charged if the customer fails to take possession of his or her vehicle more than three days after being notified repairs have been completed or terminated. This document also states storage fees may be charged if repairs are halted or terminated before the repairs are completed.

Here, both Crincoli and NJM sought to take possession of the Jeep when it was deemed to be a total loss, but defendant refused to release the vehicle. More important, defendant did not commence any repair work on the Jeep and, thus, there were no repairs that were completed, halted, or terminated before the repairs were finished. Thus, under the terms of the contract, there was no act to trigger the assessment of storage fees. Further, we reject defendant's premise the preparation of the estimate is part of the repair process. The two acts are separate and distinct. In fact, it is the estimate that provides a customer with a basis to decide if he or she wants to go forward and authorize the repairs that are the subject of the estimate.

12

Although the Authorization to Repair states Crincoli waived his right to a "detailed" written estimate, the form did not provide he waived any other rights. Moreover, waiving a detailed written estimate is quite different from waiving the right to be advised in a repair authorization of the storage fees an auto body repair facility charges, as required by N.J.A.C. 13:21-21.14.

The "Selection of Storage Option" form is a notice from defendant to Crincoli. Among other things, the notice states (erroneously) repairs have been halted, the vehicle has been and will be stored until all charges have been paid in full, Crincoli will be charged for the storage of the Jeep, and the document is a notice of claim under the Garage Keeper's Lien Act.

This document further provides that unless he wants the vehicle to be stored outside, Crincoli had to request the Jeep be stored inside. Crincoli signed this document, but his signature merely acknowledged he read and understood the document, and that he chose the option of having the Jeep stored inside. As the trial judge noted in his written comments, Autotech's position completely ignores "the realities of the underlying transaction," which impacts the result. At this time, defendant was informed the vehicle was a total loss, would

13

not be repaired, NJM would take possession of the car, and Crincoli executed a release of the vehicle to his insurer. The document inaccurately stated storage was required because repairs were interrupted because "defendant was awaiting further instructions." The judge found in fact, defendant unnecessarily dismantled the vehicle, including removing the windows and a door, thus creating the need for inside storage by its unwarranted conduct. We defer to these findings, in part resting on credibility of the witnesses.

Finally, as previously stated, a body shop repair facility may not charge for storage unless written notice of its storage charges are included in a repair authorization. See N.J.A.C. 13:21-21.14. This requirement is not insignificant. We note the subchapter of the regulations in which N.J.A.C. 13:21-21.14 appears begins with the following statement of purpose:

> (a) N.J.S.A. 39:13-1 et seq. provides for the licensure and regulation of auto body repair facilities by the Chief Administrator of the Motor Vehicle Commission. The purposes of this subchapter are to:
>
> 1. Establish a system for the licensure of auto body repair facilities; and
>
> 2. Establish standards and procedures necessary to protect the public from dishonest, deceptive, and fraudulent practices in the repair of motor vehicles damaged by collision and to eliminate or exclude from licensing

14

> those persons who engage in such practices or who otherwise demonstrate unfitness.

> [<u>N.J.A.C.</u> 13:21-21.1.]

The "Client's Termination of Repair" form states Crincoli understood storage charges would accrue until the vehicle was removed from defendant's premises, and the vehicle would not be released until all charges were paid. This document also states it is a "notice" of a garage keeper's lien.

However, after wrongfully creating the circumstances necessitating indoor storage, defendant refused to release the vehicle, artificially increasing the storage charges. The trial judge determined defendant was not entitled to much of the claimed amount due. Moreover, the judge reasoned defendant did not have to retain the vehicle to protect its claim. Therefore its failure to release the vehicle until defendant received full payment of this inflated amount inappropriately resulted in excessive storage fees. Further, defendant's conduct failed to mitigate damages.

Defendant asserts he was entitled to storage fees under the Act. To be sure, "[i]ncluded among the services that can furnish the basis for a garage keeper's lien are 'storing' or 'keeping' a motor vehicle." <u>GE Capital Auto Lease v. Violante</u>, 180 <u>N.J.</u> 24, 29 (2004); <u>see also</u> <u>N.J.S.A.</u> 2A:44-21. However,

15

the Act only applies to charges resulting from work performed or a service provided "at the request or with the consent of the owner" of the vehicle.  N.J.S.A. 2A:44-21; GE Capital Auto Lease, supra, 180 N.J. 33.  "[A] lien [for storage] only arises after the owner or the owner's representative has requested or consented to the vehicle's storage."  GE Capital Auto Lease, supra, 180 N.J. at 38.

Here, defendant did not obtain Crincoli's consent to store the Jeep in accordance with the applicable regulations. Therefore, the Act is unavailing to defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-4531-14T4